# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. McGowan*, 2013 IL App (2d) 111083

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RODNEY L. McGOWAN, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-11-1083 |
| Filed | June 17, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The 120-year sentence imposed on defendant for home invasion and aggravated criminal sexual assault of a 75-year-old woman was upheld over defendant's contention that the sentence was excessive, since defendant had been a criminal for most of his life, he violated the law even while incarcerated, his conduct essentially destroyed the life of his victim, and although rehabilitation should be considered in most cases, defendant's sentence was not an abuse of discretion. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 10-CF-1080; the Hon. Timothy Q. Sheldon, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Thomas A. Lilien and Jamie L. Montgomery, both of State Appellate Defender's Office, of Elgin, for appellant.

Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Kathryn E. Kohls, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.

Justices Zenoff and Jorgensen concurred in the judgment and opinion.

## OPINION

¶ 1    On the evening of April 23, 2010, defendant, Rodney L. McGowan, broke into the apartment of D.W., who was 75 years of age, and beat and raped her. Forensic evidence recovered from the scene, including DNA found on a used condom, identified defendant as the possible perpetrator. Defendant was charged with various offenses related to the incident, and the State notified him that it was seeking both mandatory consecutive sentences (730 ILCS 5/5-8-4(d)(1), (d)(2) (West 2010)) and extended-term sentences (730 ILCS 5/5-5-3.2(b)(2), (b)(3)(ii) (West 2010)). See 725 ILCS 5/111-3(c-5) (West 2010). Following a jury trial, defendant was found guilty of two counts of aggravated criminal sexual assault (720 ILCS 5/12-14(a)(2), (a)(5) (West 2010)), aggravated battery to a senior citizen (720 ILCS 5/12-4.6(a) (West 2010)), and home invasion (720 ILCS 5/12-11(a)(2) (West 2010)). In finding defendant guilty of aggravated criminal sexual assault and home invasion, the jury determined that the commission of those offenses was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty (see 730 ILCS 5/5-5-3.2(b)(2) (West 2010)). Following a sentencing hearing, the trial court vacated defendant's conviction of aggravated battery to a senior citizen, finding it a lesser included offense of aggravated criminal sexual assault; sentenced defendant to 60 years' imprisonment for home invasion; merged the two convictions of aggravated criminal sexual assault; and sentenced defendant to a consecutive term of 60 years' imprisonment for aggravated criminal sexual assault. Defendant moved the trial court to reconsider his sentence, arguing, among other things, that his aggregate sentence was excessive. The trial court denied the motion, and this timely appeal followed. We affirm.

¶ 2    Evidence presented at defendant's sentencing hearing, which included his presentence investigation report (PSI), revealed that defendant began committing crimes when he was a teenager. In 1984, when defendant was 16 years of age, he was arrested in Arkansas for burglary and subsequently sentenced to three years' imprisonment. He was on parole for a little more than two months when he was arrested for another burglary. Nine days after that

arrest, he was arrested for criminal conspiracy to commit aggravated robbery, criminal conspiracy to commit kidnaping, and theft of property. Defendant's parole in the first burglary case was revoked, and he was sentenced to 20 years' imprisonment for both counts involving criminal conspiracy.

¶ 3    The PSI further revealed that defendant amassed numerous disciplinary infractions while serving his 20-year prison sentence in Arkansas. These ranged from failing to obey an order given by prison staff and creating unnecessary noise to possession of drugs, indecent exposure, and making sexual proposals and threats. Defendant was released from prison in Arkansas in November 2006, and although he admitted that he engaged in illegal activities involving drug use after that, he was not arrested for any of these offenses.

¶ 4    In her victim impact statement, D.W. indicated that "[w]hen [defendant] did all that to me, he almost destroyed me and my children." She clarified that, because of the beating defendant gave her, she continues to suffer pain in her face, nose, and eyes and might go blind in one eye. Also, while she enjoyed walking long distances before the attack, she now has great difficulty getting around. Her rent and other expenses increased, and her medical bills remain unpaid; she stated that she is "broke." She further indicated that she had to move out of her apartment and is still scared and paranoid, has problems eating and drinking, and believes that she is having a nervous breakdown.

¶ 5    Jennifer Smith, who is a correctional officer at the Kane County jail, testified at defendant's sentencing hearing about her interaction with defendant when he was in jail awaiting his trial in this case. Smith recounted one occasion where defendant, who was housed on the second floor of the jail, positioned himself by his cell window and openly masturbated while staring at Smith, who was seated at the officer's desk on the first floor 120 feet away. Smith went to retrieve the ticket book, where disciplinary violations are recorded, and, upon seeing this, defendant stopped. Soon after that encounter, defendant yelled obscenities at Smith when she did not turn on the light in his cell. Defendant called Smith a " 'fucking bitch,' " told her to "suck his dick," and asserted that she did not do what he asked of her because she was not "get[ting] any dick." Defendant "told [Smith] to stick [her] stinking ass up to the crack [of the jail cell] so that he could take care of [her]." By this, defendant apparently meant that he would cut off Smith's hair, which defendant did not like, or engage in sexual activities with her. Defendant also threatened Smith, saying, " '[w]ait until I see your bleeding ass on the outside.' "

¶ 6    Kathryn McGowan, defendant's mother, testified about how much she loves her son. Kathryn suggested that life was difficult for defendant because his father was never a part of his life. Defendant had asked Kathryn, who has lung cancer and a bad kidney, not to come to court, because he was concerned for her health. Kathryn nevertheless insisted on being in court to support her son. Defendant, who was unable to get a job after being released from prison, never asked Kathryn for financial support, opting instead to sell his blood. According to the PSI, defendant would sell his blood to get money to buy drugs.

¶ 7    When defendant testified, he acknowledged that he has anger management problems. Defendant indicated that he acted inappropriately in jail because some of the correctional officers did not treat him well. Defendant elaborated that some of the officers did not feed

him and that he was denied toilet paper and toothpaste. Although defendant acted inappropriately with some of the officers, he never acted inappropriately with either of his female attorneys.

¶ 8 In allocution, defendant stated that he was sorry for what happened to D.W., but he claimed that he "had nothing to do with it." Defendant described how he helped make a documentary about the time he served in prison in Arkansas, worked with a radio station in Chicago and "put a lot of people in Elgin in Chicago on the radio," and shoveled snow for elderly people in his community for free. Defendant stated that being convicted of these offenses put stress on him and his family and that he hoped that "one day that, you know, somebody or–come forth or at least clear me from this mess."

¶ 9 In sentencing defendant, the court delineated all of the facts it considered, such as the circumstances of the offenses, D.W.'s statement, defendant's lack of a relationship with his father, and defendant's anger management issues. The court imposed a 120-year aggregate term of imprisonment because, as "a danger to civilized society," "[d]efendant [should] never again be a free man."

¶ 10 At issue in this appeal is whether defendant's 120-year prison sentence is excessive. The trial court's sentencing decision is entitled to great deference, and we may not disturb a defendant's sentence unless the trial court abused its discretion. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). A sentence that falls within the statutory range is not an abuse of discretion unless it varies greatly from the purpose and spirit of the law or is manifestly disproportionate to the nature of the offense. *People v. Averett*, 381 Ill. App. 3d 1001, 1020-21 (2008). Because the trial court is in a superior position to evaluate the defendant's credibility and demeanor and to balance the various factors in aggravation and mitigation, we may not overturn a sentence merely because we might have weighed the pertinent factors differently. See *Stacey*, 193 Ill. 2d at 209.

¶ 11 In sentencing a defendant, the trial court must consider the character and circumstances of the offense itself (*People v. Bowman*, 357 Ill. App. 3d 290, 304 (2005)) and the defendant's character, criminal history, mentality, social environments, habits, age, future dangerousness, and potential for rehabilitation (*People v. Thompson*, 222 Ill. 2d 1, 35 (2006); *Averett*, 381 Ill. App. 3d at 1020). Of all these factors, the seriousness of the offense has been called the most important. *People v. Jones*, 376 Ill. App. 3d 372, 394 (2007); *People v. Evans*, 373 Ill. App. 3d 948, 968 (2007).

¶ 12 Here, given all of the facts presented, we cannot conclude that a 120-year sentence, which is the maximum that could have been imposed, was excessive. The evidence reveals that defendant has been a criminal for more than half of his life. Even when he was not incarcerated, he still chose to violate the law by, among other things, possessing drugs. When defendant was in prison in Arkansas, he repeatedly failed to follow the rules. Indeed, defendant's citations for making sexual threats suggest that, on some occasions, defendant's conduct amounted to much more than simply failing to follow the rules. Defendant's abhorrent behavior persisted when he was in jail in Kane County. Smith testified to how defendant's conduct toward her was far from simply uncivil. Added to all of that are the horrendous circumstances of the present offenses. Defendant broke into the home of an

elderly woman and beat and raped her with such force that she is now physically, mentally, and financially ill-equipped to continue with a life similar to the one she had before the attack. And, seemingly oblivious to the victim's welfare or the jury's determination of defendant's guilt, which was based, at least in part, on forensic evidence recovered at the scene, defendant's concern focused on finding someone to clear him of "this mess." Because of the abundance of aggravating factors, we conclude that the trial court did not abuse its discretion in sentencing defendant.

¶ 13        Defendant claims that the aggregate sentence imposed violates the constitutional directive of restoring him to useful citizenship. "The command of the Illinois Constitution to consider the rehabilitative potential of a criminal offender in sentencing does not require a court in every instance to grant the offender an opportunity for rehabilitation." *People v. Bien*, 277 Ill. App. 3d 744, 756 (1996). Thus, "[n]ot *all* criminal defendants must be given an opportunity for rehabilitation." (Emphasis in original.) *Id.* at 755-56. If an opportunity for rehabilitation were required in every case, then "life imprisonment would not be constitutionally permissible." *Id.* at 756. "The responsibility for balancing between rendering justice and rehabilitating the defendant rests with the trial court." *Id.* Imposing what is, for practical purposes, a life sentence on "a defendant who has committed heinous physical and emotional harm to a victim is not at variance with the spirit and purpose of the law." *Id.*

¶ 14        Although we agree that an opportunity for rehabilitation should be granted in most cases, the trial court found that the circumstances here dictated otherwise. We cannot conclude that the trial court's assessment constituted an abuse of discretion.

¶ 15        Additionally, citing several cases where the defendants were convicted of similar offenses and had their sentences reduced, defendant suggests that his sentence likewise should be reduced. We disagree. Disparate sentences imposed on defendants convicted of similar offenses may be justified if there is a valid reason for the disparity. *People v. Stroup*, 397 Ill. App. 3d 271, 274 (2010). Between this case and the cases on which defendant relies, there is a valid reason for the disparity. In one case, the defendant had a relatively benign criminal history. *People v. Merritt*, 53 Ill. App. 3d 929, 932 (1977) (the defendant had one prior conviction and that was of a misdemeanor). In another, the defendant's criminal acts were intrusive, but they were not violent. *People v. Maggette*, 195 Ill. 2d 336, 355 (2001) ("Although [the] defendant's behavior was appalling and harmful, it was not severe enough to warrant the [10-year] sentence imposed.").

¶ 16        Defendant also relies on the concurrence in a federal case to argue that his "life sentence" should be reduced. In *United States v. Craig*, 703 F.3d 1001, 1004 (7th Cir. 2012) (Posner, J., concurring) (*per curiam*), the judge suggested that factors to consider should include "the cost of imprisonment of very elderly prisoners, the likelihood of recidivism by them, and the modest incremental effect of substituting a superlong sentence for a merely very long sentence." Although those facts may have been significant in *Craig*, where the defendant, who was 46 when he was sentenced for producing child pornography, had no criminal history (*id.* at 1002 (majority op.)), the same cannot be said of defendant here. Unlike the defendant in *Craig*, defendant here had a limited criminal history only because he had been incarcerated for most of his life. Given all of these facts, we cannot conclude that the trial court abused its discretion when it imposed a 120-year sentence.

¶ 17    For these reasons, we affirm the judgment of the circuit court of Kane County.

¶ 18    Affirmed.