Rule 23 order filed
February 25, 2020.
Modified upon denial of
rehearing May 20, 2020.

2020 IL App (5th) 160493-U

NOS. 5-16-0493, 5-16-0494 (cons.)

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Clay County. |
| | ) | |
| v. | ) | Nos. 16-CF-15 & 16-CF-18 |
| | ) | |
| KENNETH S. LOSS, | ) | Honorable |
| | ) | Wm. Robin Todd, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BOIE delivered the judgment of the court.
Justices Cates and Moore concurred in the judgment.

**ORDER**

¶ 1 *Held*: The trial court did not abuse its discretion in sentencing the defendant. Remand for proper hearing, rather than outright vacatur of public defender reimbursement fee, is appropriate remedy for trial court's failure to follow appropriate procedural requirements before imposing fee.

¶ 2 BACKGROUND

¶ 3 Kenneth Loss (defendant) was required to register as a sex offender pursuant to the Sex Offender Registration Act (SORA) (730 ILCS 150/2 *et seq*. (West 2014)), for a 10-year period, following three misdemeanor convictions for public indecency in 2001, 2004, and 2007. Defendant testified that he was not made aware of the requirement that he register pursuant to SORA until sometime in 2012, at which point he began registering. Defendant was convicted of violating SORA in 2014 for failure to notify the appropriate authorities of a change of address and

1

employment and sentenced to the Illinois Department of Corrections (IDOC). Defendant was released from IDOC on December 15, 2015.

¶ 4    Upon his release from IDOC, defendant initially lived with a friend in Xenia, Illinois. He began working at Xenia Manufacturing in January 2016. Defendant's friend relocated and defendant moved in with another friend, Heather Helm (Helm), and her husband, in Louisville, Illinois. Defendant registered his address with Helm through Sergeant Greenwood of the Clay County Sheriff's Department on February 11, 2016. Sergeant Greenwood read the conditions for defendant's registration from a preprinted form, entitled Illinois Sex Offender Registration Form, which was published and provided by the Illinois State Police. Defendant initialed each one of the 14 paragraphs that explained his duty to register and signed the form stating that he understood his duty to register. Two relevant recitations of these conditions from the Illinois State Police form included the following language:

> "Within three days of changing your address, you must report your new address in person with the law enforcement agency with whom you last registered. You must, within three days of changing your address, register in person with a police department or, if none, the sheriff's office having jurisdiction at your new address. Temporary absences for more than three days in a calendar year require you to register your new address.

> Any person required to register under this Act who lacks a fixed residence must notify the agency with jurisdiction of the last known address within three days after ceasing to have a fixed residence and if the offender leaves the last jurisdiction of residence, the offender must within three days after leaving, register in person with the new agency of jurisdiction and must report weekly in person with the agency having jurisdiction."

2

¶ 5    Sergeant Greenwood spent 20 minutes with the defendant and offered an opportunity to ask any questions about registration and the requirements that were explained to him. Defendant believed he understood the temporary domicile registration requirement; however, he interpreted the requirement incorrectly. According to defendant, he believed that he could stay anywhere without registering a new temporary domicile or notifying the sheriff's department where he last registered his permanent address, as long as he was never absent from his registered address for more than three consecutive days.

¶ 6    On March 10, 2016, Helm was interviewed by Deputy Cartright of the Clay County Sheriff's Department. Helm informed Deputy Cartright that defendant stayed with a friend, Joshua Ferguson, in Xenia, Illinois, during the week. Upon further inquiry by Deputy Cartright, Helm reported that defendant worked during the week at Xenia Manufacturing. Defendant would leave for work on Monday and would not return to the registered address until Saturday mornings. On March 13, 2016, Deputy Cartright interviewed defendant, who said he had been staying with Nona Slagley in Xenia, Illinois, for the past two weeks. Defendant explained that he was having trouble finding rides from work, so he would return to his registered address on Friday and stay until Sunday. Defendant further explained that he was staying in Xenia for the week because he worked in Xenia, which was over 10 miles from his registered address. Defendant's shift ended at midnight, it was cold during these months, and he did not have a driver's license.

¶ 7    On March 18, 2016, defendant was charged with unlawful failure of a registered sex offender to notify the Clay County Sheriff's Office of a change of address, in violation of section 3(b) of SORA (730 ILCS 150/3(b) (West 2016)), a Class 3 felony, in case number 2016-CF-15. The State alleged that defendant failed to register in person with the Clay County Sheriff's Department within three days of establishing a temporary domicile in Xenia, Illinois, between

February 29, 2016, and March 14, 2016. The statute defines a temporary domicile as follows: "any and all places where the sex offender resides for an aggregate period of time of 3 or more days during any calendar year." *Id.* § 3(a). Defendant was released on bond pending the disposition of the case.

¶ 8        While defendant was released on bond in 2016-CF-15, Deputy Feldhake spoke with Helm again on April 4, 2016. Helm estimated that defendant would spend about two days per week at her home in Louisville, Illinois. Deputy Feldhake also spoke to Nona Slagley, the occupant of a residence in Xenia, Illinois. She informed Deputy Feldhake that defendant did not live there. She said defendant was staying at another home but did stop in to help her on occasion. Joshua Ferguson reported that he and defendant stayed on and off in Flora, Illinois, and that on occasion, defendant also stayed with his girlfriend, Kathy Lister.

¶ 9        Defendant was interviewed again and explained that his understanding of the requirements of SORA was that he could be absent from his registered address for any amount of time in a year as long as he was never away in excess of three consecutive days, at which point he would need to register that address as well. Defendant admitted to staying more than three consecutive days with Joshua Ferguson at an address that was not registered, while released on bond.

¶ 10        Another information was filed on April 5, 2016, charging defendant with unlawful failure of a registered sex offender to notify of a change of temporary domicile, in violation of section 3(b) of SORA (*id.* § 3(b)), a Class 2 felony, in 2016-CF-18. The State alleged that defendant had failed to notify the Clay County Sheriff's Department within three days of establishing a temporary domicile in Flora, Illinois, between March 28-31 and April 2-4, 2016.

¶ 11        On June 10, 2016, defendant pled guilty in the two separate cases, 2016-CF-15 and 2016-CF-18, to charges alleging his failure to comply with the requirements of SORA. The only

4

agreement entered into in exchange for the plea was the State's agreement that it would not file any further charges. The two cases have been consolidated for purposes of this appeal.

¶ 12 A sentencing hearing was held on July 18, 2016. Defendant was subject to a sentencing range of two to five years' imprisonment in IDOC in 2016-CF-15, for the Class 3 felony charge. He was also eligible for an extended-term sentence based on his prior Class 2 felony conviction because it occurred within the past 10 years, raising the possible sentencing range to 2 to 10 years' imprisonment. 730 ILCS 5/5-5-3.2(b)(1) (West 2016). Defendant was subject to a sentencing range of three to seven years' imprisonment in IDOC in 2016-CF-18, for the Class 2 felony charge. It was mandatory that the sentence in 2016-CF-18 would run consecutively to that in 2016-CF-15, because the offense was committed while defendant was released on bond in 2016-CF-15. *Id.* § 5-8-4(d)(8). Both cases were probation eligible.

¶ 13 The trial court considered the presentence investigation report, the testimony, and exhibits presented at the sentencing hearing regarding aggravation and mitigation. The trial court further considered defendant's statement in allocution, the attorneys' arguments, the costs of incarceration, and the facts asserted at the guilty plea hearing. The trial court found that "a sentence of probation would deprecate the seriousness of the offender's conduct." The court sentenced defendant to three years and six months of incarceration in IDOC with a one-year term of mandatory supervised release in case 2016-CF-15. The court ordered defendant to pay fines and court costs as ordered in addition to a $500 public defender fee. In 2016-CF-18, defendant was sentenced to four years and six months of incarceration in IDOC with a two-year term of mandatory supervised release, to be served consecutively with the sentence in 2016-CF-15. The court did not impose an extended-term sentence despite defendant's eligibility and the State's

5

request for a five-year sentence. The defendant's aggregate sentence for both cases was eight years in IDOC.

¶ 14    Defendant filed a motion to reconsider the sentence, and a hearing was held on August 15, 2016. Defendant argued that his sentence should be reduced because he had no prior felony conviction for a sex offense, the current offense was not a sex offense, no individual was injured by defendant's registration violations, and a sentence to IDOC would affect his ability to provide for his children. Defendant introduced an audio exhibit of defendant having a phone conversation with Deputy Cartright, wherein defendant requested clarification of the rules in SORA as they applied to him. The recording revealed that defendant was told by Deputy Cartright that he "believe[d] it's, um, that you can't stay away from your house, every, for three days." Deputy Cartright said he was not positive on that, and instructed defendant to contact the jailer the next day.

¶ 15    The trial court denied the defendant's motion to reconsider sentence and defendant appealed, arguing that the trial court abused its discretion in fashioning a sentence. Defendant also argues that he should not be required to pay the court-ordered public defender reimbursement fee because a proper hearing was not held.

¶ 16                                    ANALYSIS

¶ 17                        I. Abuse of Discretion in Sentencing

¶ 18    Defendant's contention on appeal is that the trial court abused its discretion by sentencing defendant to a combined eight-year term in IDOC entered on his two felony guilty pleas. According to defendant, his eight-year sentence is excessive, given the nature of the crime and the attendant circumstances. Defendant argues that the sentence was excessive and disproportionate to the registration violations where defendant did not intend to violate the act, had no history of

violence or child-related sex crimes, and was an employed and contributing member of society. The State responds that the trial court properly exercised its discretion in sentencing the defendant where the sentences were within the statutory limits and were based on a careful consideration of the factors in aggravation and mitigation.

¶ 19 Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1, 1967) gives reviewing courts the authority to reduce a sentence imposed by the trial court. *People v. Jones*, 168 Ill. 2d 367, 376 (1995). While the trial court is afforded broad discretion in sentencing, such discretion is not without limitation. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). The power of the appellate court to reduce an excessive sentence should be exercised cautiously and sparingly. *Jones*, 168 Ill. 2d at 378.

¶ 20 Appellate review of a sentence fashioned by the trial court is limited to whether the record discloses that the trial court's sentencing decision was unlawful or an abuse of discretion. *Id*. Sentences are presumed to be proper. *People v. Boclair*, 225 Ill. App. 3d 331, 335 (1992). When a sentence falls within the statutorily prescribed range, it will not be found to be excessive or an abuse of discretion unless the sentence greatly varies from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *People v. Weiser*, 2013 IL App (5th) 120055, ¶ 33. In other words, an abuse of discretion may be found, even if the sentence is within the statutory range, if it is contrary to the purpose and spirit of the law. *Id*. The spirit and purpose of the law are promoted when the trial court's sentence both reflects the seriousness of the offense and gives sufficient consideration to the defendant's rehabilitative potential. *Boclair*, 225 Ill. App. 3d at 335.

¶ 21 A trial court has broad discretionary powers in choosing the appropriate sentence a defendant should receive. *Id*. An abuse of discretion will only be found where the sentencing

7

court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Hall*, 195 Ill. 2d 1, 20 (2000). The trial court is granted this deference because the trial court is in a superior position to assess the credibility of the witnesses and to weigh the evidence presented at the sentencing hearing. *People v. La Pointe*, 88 Ill. 2d 482, 492-93 (1981). As a consequence, a reviewing court may not overturn a sentence merely because it might have weighed the pertinent factors differently. *People v. McGowan*, 2013 IL App (2d) 111083, ¶ 10.

¶ 22    Applying these principles to the instant case, we hold that the trial court did not abuse its discretion in sentencing the defendant to an aggregate eight-year IDOC term. Defendant pled guilty to unlawful failure of a registered sex offender to notify of change of address, a Class 3 felony, in 2016-CF-15. Defendant could have been sentenced to between 2 and 10 years in IDOC for the Class 3 felony based on his eligibility for extended term sentencing. He also pled guilty to unlawful failure of a registered sex offender to notify of a change of address of temporary domicile, a Class 2 felony, in 2016-CF-18. For that charge, he was subject to a sentence between three and seven years in IDOC. Defendant committed the second offense while released on bond for the first offense, thereby subjecting him to mandatory consecutive sentencing. 730 ILCS 5/5-8-4(d)(8) (West 2016). The trial court sentenced defendant to a term of three years and six months in IDOC and one year of mandatory supervised release in 16-CF-15, and a term of four years and six months in IDOC with two years mandatory supervised release in 2016-CF-18. The aggregate sentence imposed was eight years in IDOC.

¶ 23    Although probation was an available sentence, the trial court found that a sentence of probation would deprecate the seriousness of the defendant's conduct. The minimum, aggregate potential sentence to IDOC the defendant was subject to was 5 years, and the maximum, aggregate

potential sentence defendant could have received was 17 years. The sentences fashioned by the trial judge fall in the middle of the potential sentencing range and are not excessive or an abuse of discretion.

¶ 24    Defendant argues that the court did not give proper consideration to certain mitigating factors, including: defendant's lack of violence and sexual reoffending, lack of dangerousness, lack of any threat of serious harm, that the conduct was unlikely to recur, that there were substantial grounds tending to excuse or justify his conduct, and that he was particularly likely to comply with the terms of a period of probation. Further, defendant's incarceration would entail excessive hardship to his dependents. However, the court stated that it had:

"considered the presentence investigation report which was filed in both of these causes as it was amended as stated on the record. The court has considered the testimony in aggravation and the exhibits that were provided by the people, which were Exhibits 1 and 2. The court has further considered the testimony in mitigation which was presented through the testimony of the defendant. Court has considered the financial impact statement received from the Illinois Department of Corrections, the most recent one received by this court being dated February, well, it was based on 2014 data, and that indicates the annual cost of incarceration of an individual in a department facility to be $22,655. The court has considered the evidence that exists in this case both from its recollection of the information that was presented at the presentation of the plea in these matters and as set forth in the PSI through the reports of the officers and the actual statements made by the defendant today with regard to those offenses in his testimony. The court has further considered the statement of allocution, which was presented by the defendant, has considered the

argument of the state's attorney and the arguments of the defendant's counsel with regard to appropriate sentencing in these cases."

¶ 25 When mitigating evidence is presented at the sentencing hearing, a reviewing court presumes the trial court took that evidence into consideration, absent some contrary evidence. *People v. Shaw*, 351 Ill. App. 3d 1087, 1093 (2004). "[A] trial court is not required to expressly outline its reasoning for sentencing, and absent some affirmative indication to the contrary (other than the sentence itself), we must presume that the court considered all mitigating factors on the record." *People v. Jones*, 2014 IL App (1st) 120927, ¶ 55. This presumption may be overcome only by showing explicit evidence from the record that the trial court did not consider mitigating evidence. *People v. Flores*, 404 Ill. App. 3d 155, 158 (2010). The burden is on the defendant to affirmatively establish that the sentence was based on improper considerations. *People v. Dowding*, 388 Ill. App. 3d 936, 942 (2009). Defendant does not show any affirmative indication of record that the trial court failed to consider any mitigating factors.

¶ 26 In fact, regarding the defendant's contentions that the trial court did not consider the mitigating factors that the conduct was unlikely to recur or that he was particularly likely to comply with a period of probation, the record supports the opposite conclusion. Defendant's prior criminal history included three misdemeanor charges for public indecency, theft, and trespass to motor vehicle. Defendant was previously sentenced to two years in IDOC for another Class 3 felony conviction for failure of a registered sex offender to report a change of address. Defendant had a history of probation revocations and had been resentenced for probation violations on five separate occasions since 2001. Further, defendant's presentence investigation report revealed that he had been convicted of driving while license suspended 13 times, further evincing an inability to follow the law and adhere to rules.

10

¶ 27    Defendant was on notice to pay careful attention to the requirements of SORA. Defendant previously violated SORA and was sentenced to IDOC in 2014. After defendant's release from IDOC in 2015, he was arrested for violating SORA again, and while released on bond for the second violation of the statute, he was arrested for another SORA violation. These circumstances, coupled with defendant's criminal history, provide a sufficient factual basis for the court to disagree with defendant's contentions of mitigation.

¶ 28    In the present case, the record indicates that the trial judge considered all of the statutory factors in both aggravation and mitigation. Therefore, we find no abuse of discretion by the trial court in the sentencing of this defendant.

¶ 29                                II. Reimbursement Fee

¶ 30    The final issue on appeal is whether the fee imposed by the trial court to reimburse the public defender should be vacated for lack of a hearing pursuant to section 113-3.1(a) of the Code of Criminal Procedure of 1963 (Code). 725 ILCS 5/113-3.1(a) (West 2016). "Whether the [trial] court properly imposed the public-defender-reimbursement fee is a question of law, which we review *de novo*." *People v. Aguirre-Alarcon*, 2016 IL App (4th) 140455, ¶ 9.

¶ 31    Pursuant to section 113-3.1(a) of the Code, when counsel is appointed to represent a defendant, the trial court may enter an order requiring the defendant to reimburse the county or the State for the representation. 725 ILCS 5/113-3.1(a) (West 2016). That section further provides: "In a hearing to determine the amount of the payment, the court shall consider the affidavit prepared by the defendant *** and any other information pertaining to the defendant's financial circumstances ***." *Id.* The hearing shall be conducted on motion of the State or on the court's own motion at any time after defense counsel is appointed but no later than 90 days after a final

11

order disposing of the case at the trial level is entered. *Id*. The hearing is mandatory. *People v. Darr*, 2018 IL App (3d) 150562, ¶ 102.

¶ 32    Here, the defendant argues there was no attempt by the trial court to determine the amount of reasonable payment to the county for the services rendered by the public defender or to consider defendant's financial circumstances prior to the fee being ordered. See 725 ILCS 5/113-3.1(a) (West 2016). At the sentencing hearing there was argument presented to the trial court from both the State and the defendant regarding the public defender fee. The presence of both parties at a hearing who had sufficient notice that a fee would be considered, as evidenced by both parties addressing the fee in argument, leads us to the conclusion that some manner of hearing took place. The State admits that the hearing was not sufficient for the trial court to order the fee and this court agrees.

¶ 33    The defendant acknowledges that the facts of this case would ordinarily require this court to remand for a proper hearing on defendant's ability to pay; however, he nonetheless requests this court vacate the fee outright. See *Darr*, 2018 IL App (3d) 150562, ¶ 104 (public defender reimbursement fee vacated outright where there was not "some sort of hearing" on the issue); *People v. Daniels*, 2015 IL App (2d) 130517, ¶¶ 29-30 (public defender fee vacated outright where no hearing was deemed to have occurred where circuit court made no reference to fee during sentencing hearing but subsequently imposed the fee in the absence of the parties).

¶ 34    This court is bound by the decision of our supreme court in *Hardman*, holding that where some hearing took place on the issue of the public defender fee, although deficient, the appropriate remedy is to remand the issue for the trial court to fully comply with section 113-3.1(a) by conducting a proper hearing. *People v. Hardman*, 2017 IL 121453, ¶ 66.

¶ 35　　The Illinois Supreme Court in *Hardman* applied a liberal definition of "some sort of a hearing" (*id.* ¶¶ 64, 66) and concluded that—deficiencies notwithstanding—"some sort of a hearing" occurred because a hearing occurred within the requisite 90-day time limit, the parties were present, and the issue of the public defender fee was considered. *Id*. ¶ 66. In this case, the public defender fee was discussed by both parties prior to the entry of the order by the trial court that the defendant reimburse the county for the services of the public defender in the amount of $500. The State raised the issue of the public defender reimbursement fee during argument at the sentencing hearing and defense counsel commented that the fee would be appropriate if defendant was sentenced to probation. However, the trial court did not inquire as to the services provided by the public defender, nor did it sufficiently inquire as to defendant's ability to pay.  Accordingly, we remand for a proper hearing on defendant's ability to pay the public defender reimbursement fee.

¶ 36　　　　　　　　　　　　　　　CONCLUSION

¶ 37　　For the foregoing reasons, the judgment of the circuit court of Clay County regarding defendant's sentence is affirmed and the order for payment of the public defender fee is vacated and remanded for a hearing pursuant to section 113-3.1(a) of the Code (725 ILCS 5/113-3.1(a) (West 2016)).

¶ 38　　Affirmed in part and vacated in part; cause remanded.