2022 IL App (2d) 200489-U
No. 2-20-0489
Order filed June 6, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Winnebago County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 18-CF-3172 |
| | ) | |
| JAMES GREGORY FARMER, | ) | Honorable |
| | ) | Jennifer J. Clifford, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HUDSON delivered the judgment of the court.
Presiding Justice Bridges and Justice Hutchinson concurred in the judgment.

**ORDER**

¶ 1   *Held*: Defendant's four-year prison sentence after revocation of his probation for aggravated domestic battery was not excessive given the seriousness of the offense (strangling the victim), defendant's criminal history, and his failure to comply with probation conditions including that he have no contact with the victim.

¶ 2   Defendant, James Gregory Farmer, entered a negotiated plea of guilty to a single count of aggravated domestic battery, a Class 2 felony (720 ILCS 5/12-3.3(a-5)(b) (West 2018)) and was sentenced to a 30-month term of probation. The trial court later revoked defendant's probation and resentenced him to a four-year prison term. Defendant argues on appeal that the sentence is excessive. We affirm.

¶ 3                                                    I. BACKGROUND

¶ 4      Defendant was 50 years old, unemployed, and homeless at the time of the offense. Defendant entered his guilty plea on February 12, 2019. The factual basis for the plea indicated that on December 11, 2018, defendant accosted Vicki Fox, whom he had been dating for about a year. Defendant put both his hands around Fox's neck and squeezed. Fox told the police that she could barely breathe, and the officers saw a red mark on her neck. Under defendant's plea agreement, he was sentenced to a 30-month term of probation. Conditions of probation included refraining from the consumption of alcohol or the use of drugs unless prescribed by a physician. Defendant was required to serve 180 days in the Winnebago County jail, with credit for 64 days served. The rest of the jail term was stayed pending compliance with the terms and conditions of probation. Defendant was to have no contact with Fox.

¶ 5      On August 12, 2019, the probation department filed a status report detailing defendant's compliance with probation. The report noted that defendant was homeless. Defendant reported for a May 24, 2019, social history interview and a July 3, 2019, office visit. However, defendant failed to report for a June 4, 2019, office visit, a July 23, 2019, field contact, and an August 6, 2019, office visit. On May 24, 2019, defendant tested positive for alcohol. On July 3, 2019, defendant admitted to using alcohol. Defendant also admitted having contact with Fox twice, but he stated that he would have no further contact with her. The status report noted, however, that "on 8/1/19, [defendant] and his no contact victim were named in a Rockford Police case," which seemingly indicated that defendant was still having contact with Fox.

¶ 6      At a status hearing held on the same date that the status report was filed (August 12, 2019), defendant advised the trial court that he was aware he had missed appointments. He explained that he was living under the Kishwaukee bridge and had been jumped and robbed. He stated that

he "[did not] get around too well." The trial court responded that the larger concern for defendant's probation office was defendant's contact with Fox. The trial court lifted the stay on defendant's jail term and ordered him to serve 10 days in jail with a brief furlough for him to attend a meeting about housing services.

¶ 7    An October 28, 2019, status report indicated that defendant had reported for office visits on September 12, 2019, September 18, 2019, and October 8, 2019. Defendant tested positive for alcohol and cocaine on September 18, 2019. He again tested positive for alcohol on October 8, 2019. The status report reflected concern that defendant was continuing to have contact with Fox. The status report noted that a Rockford police report indicated that defendant and Fox were at the same residence.

¶ 8    Defendant failed to appear in court at a status hearing on October 28, 2019. The trial court issued a no-bond bench warrant and ordered defendant to serve the remaining 106 days of his jail term. On November 22, 2019, the State filed a petition to revoke defendant's probation. On February 26, 2020, defendant admitted one of the allegations of the petition: that he had failed to report to probation on August 6, 2019. There was no agreement as to resentencing. The trial court released defendant on a recognizance bond pending resentencing.

¶ 9    The trial court ordered the preparation of a presentence investigation report (PSI). The PSI indicated that defendant's criminal history included felony convictions of criminal damage to property and aggravated battery in 1993 and criminal sexual assault in 1998. Defendant also had numerous misdemeanor convictions. However, the PSI showed over 11 years, from early 2004 to late 2015, where defendant had no arrests.

¶ 10    According to the PSI, defendant was raised by his maternal grandmother. His family was poor. Defendant never knew his biological father, and his stepfather was abusive. When defendant

was eight years old, he was sexually molested by an uncle. Defendant dropped out of high school after the eleventh grade, but he obtained a GED and took some community college courses in electronic engineering. Defendant had a close relationship with his brother and a positive relationship with his mother. They provided him with strong emotional and personal support. Defendant believed that he had been diagnosed with anxiety, depression, and bipolar disorder. Defendant indicated that his physical health was poor. He had back, hip, and knee problems, and could barely walk. Defendant reported having six close friends, with whom he had regular contact. One of his friends was called "Pappy." Defendant went to Pappy's home four days a week to attend a class that was being conducted by conference call. Pappy smoked marijuana. Defendant was also friends with Fox, who used crack cocaine. Defendant also had regular contact with other homeless people, some of whom used drugs such as crack cocaine and heroin. For the offense giving rise to this case, defendant denied that he strangled Fox. He claimed that he put his hands on her shoulders to stop her from hitting him.

¶ 11    A status report filed on June 18, 2020, indicated that defendant reported to probation on March 24, 2020, March 25, 2020, April 13, 2020, and April 30, 2020, but failed to report on May 28, 2020. He tested positive for alcohol on March 3, 2020. On May 15, 2020, defendant was unsuccessfully discharged from substance abuse classes due to nonattendance.

¶ 12    A status report filed on August 5, 2020, indicated that defendant reported to probation on June 22, 2020, July 8, 2020, and July 31, 2020. He tested positive for alcohol on July 31, 2020. Defendant was readmitted to the substance abuse classes, but he missed the second group meeting on August 3, 2020, and left early from the third group meeting on August 4, 2020.

¶ 13    Defendant's resentencing hearing took place on August 6, 2020. No evidence was presented. In imposing sentence, the trial court noted defendant's substantial criminal history, but

noted that there was a long interval during which defendant had no arrests. The trial court also noted the seriousness of the offense, which involved strangling Fox. The trial court remarked, "It is close to lethality. It is close to somebody dying." The trial court also considered defendant's poor performance on probation, noting in particular that he had tested positive for alcohol and drugs and failed to attend substance abuse programs. The trial court concluded that, if resentenced to probation, defendant was unlikely to comply with its terms. The trial court expressed concern that defendant was associating with drug users and was not taking responsibility for his actions. The trial court sentenced defendant to a four-year prison term, which was one year longer than the minimum term of three years and three years shorter than the maximum term of seven years. See 720 ILCS 5/12-3.3(b) (West 2018) (aggravated domestic battery is a Class 2 felony); 730 ILCS 5/5-4.5-35(a) (West 2018) ("The sentence of imprisonment [for a Class 2 felony] shall be a determinate sentence of not less than 3 years and not more than 7 years."). Defendant was required to serve 85% of his sentence. See 730 ILCS 5/3-6-3(a)(2)(vii) (West 2018).

¶ 14    Defendant moved to reconsider the sentence. The trial court denied the motion, and this appeal followed.

¶ 15                                II. ANALYSIS

¶ 16    Defendant argues that his four-year prison sentence imposed after revocation of his probation is excessive. We disagree.

¶ 17    The following principles govern resentencing after the revocation of probation:

"Upon revocation of a defendant's probation, the trial court resentences the defendant 'to a disposition that would have been appropriate for the original offense.' [Citation.] 'Although the sentence imposed after revocation of probation may not constitute punishment for conduct which was the basis of revocation, the defendant's conduct on

probation is to be considered by the trial court in assessing the defendant's potential for rehabilitation ***.' [Citation.] '[I]t is appropriate for a defendant who conducts himself poorly while on probation to receive a more severe sentence than he originally received.' [Citation.] Also, 'a sentence imposed after probation is revoked may differ from the sentence which could have been imposed had probation not been granted.' [Citation.]" *People v. Pina*, 2019 IL App (4th) 170614, ¶ 30.

When imposing a sentence, "the trial court must consider the character and circumstances of the offense itself [citation] and the defendant's character, criminal history, mentality, social environments, habits, age, future dangerousness, and potential for rehabilitation [citations]." *People v. McGowan*, 2013 IL App (2d) 111083, ¶ 11. The seriousness of the offense is the most important sentencing factor. *People v. Flores*, 404 Ill. App. 3d 155, 159 (2010).

¶ 18    Defendant argues that his failure to comply with the conditions of probation was due to his homelessness and substance abuse problems. He claims that his conduct on probation did not warrant a prison term greater than the three-year minimum. However, defendant's conduct on probation is not the only, or even primary, consideration. As discussed, when a defendant is resentenced after the revocation of probation, the new sentence is punishment for the original offense, not for the defendant's misconduct on probation. Thus, a defendant's relative blamelessness in failing to comply with some probation conditions does not necessarily entitle the defendant to the minimum prison term. Rather, the court must consider the full range of circumstances germane to the sentencing decision.

¶ 19    In any event, defendant's attempt to minimize his probation violations is not persuasive in this case. We appreciate that defendant's homelessness might have complicated his efforts to maintain contact with the probation department and to attend mandated programs. Defendant also,

however, failed to refrain from alcohol and drug use, which is relevant to his rehabilitative potential and, thus, is a sentencing factor. *People v. Pina*, 2019 IL App (4th) 170614, ¶ 24. Moreover, nothing in the record suggests that defendant's homelessness and alcoholism excused his failure to comply with the condition that he have no contact with Fox.

¶ 20    Again, however, it is not just defendant's conduct on probation that is at issue. Defendant had a substantial criminal history that included three felonies, including a sex offense. Defendant notes that the felony convictions dated back to the 1990s, but their age does not entirely negate their value as factors in aggravation for purposes of determining an appropriate prison term upon the revocation of defendant's probation. Defendant's criminal history also included numerous misdemeanor convictions.

¶ 21    Notably, despite defendant's age (fifty at the time of the offense), his criminal history, and his conduct on probation, the trial court did not discount defendant's rehabilitative potential. In its ruling on defendant's motion to reconsider, the trial court stated, "[I] did take into consideration what I believe to be your strong rehabilitative potential when I sentence[d] you to the low end of what I could sentence you to." However, "[t]he trial court need not give greater weight to any potential for rehabilitation than to the seriousness of the offense." *People v. Murray*, 2020 IL App (3d) 180759, ¶ 33. The trial court assessed the offense as extremely serious. "The word 'offense,' in the phrase the 'seriousness of the offense,' means not the statutory offense in the abstract but the offense as committed by the defendant: the particular facts and circumstances of the defendant's offense." *People v. Aquisto*, 2022 IL App (4th) 200081, ¶ 112. Here, defendant strangled Fox so that she could barely breathe. As the trial court noted, doing so put her life at risk.

¶ 22 We presume that a sentence within the statutory guidelines is proper, and we will not disturb the sentence absent an abuse of discretion. *People v. Walker*, 2021 IL App (4th) 190073, ¶ 75. "A sentence will be deemed an abuse of discretion where the sentence is 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *People v. Alexander*, 239 Ill. 2d 205, 212 (2010) (quoting *People v. Stacey*, 193 Ill. 2d 203, 210 (2000)). The applicable sentencing range here, a Class 2 felony (see 720 ILCS 5/12/-3.3(b) (West 2018)), was a minimum of three years and a maximum of seven years (see 730 ILCS 5/5-4.5-35(a) (West 2018)), and defendant was required to serve 85% of his sentence (see *id.* § 3-6-3(a)(2)(vii)). Even though the trial court found that defendant had "strong" rehabilitative potential, given the seriousness of the crime, defendant's failure to comply with the conditions of probation, and defendant's statement in the PSI reflecting a failure to take responsibility for the offense, we cannot say that a sentence one year longer than the minimum and three years shorter than the maximum was an abuse of discretion.

¶ 23                                    III. CONCLUSION

¶ 24 For the foregoing reasons, we affirm the judgment of the circuit court of Winnebago County.

¶ 25 Affirmed.