2020 IL App (2d) 180182
No. 2-18-0182
Opinion filed September 3, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CF-337 |
| JAMIE PEARSON, | ) ) ) | Honorable Brendan A. Maher, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices Bridges and Brennan concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Jamie Pearson, appeals from his conviction under section 17-57(a)(2) of the Criminal Code of 2012 (Code) (720 ILCS 5/17-57(a)(2) (West 2016)) of defrauding a drug or alcohol screening test by substituting a sample with the intent of defeating that test.   He contends that the evidence was insufficient to support his conviction.   The primary contested issue is a narrow one.   Defendant concedes that, during urine testing required as a condition of his probation, he used a device that dispensed a substance that appeared to be urine.   However, he contends that, because the State presented no evidence that the substance was something other than his own urine, the evidence was insufficient as a matter of law to show that the sample was "substituted."   He also contends that section 17-57(b) of the Code (720 ILCS 5/17-57(b) (West

2016)) barred the trial court from inferring from his use of the device that he substituted a sample. We reject both of defendant's arguments, and we therefore affirm.

¶ 2                                    I. BACKGROUND

¶ 3     The evidence at defendant's bench trial showed that his probation required him to submit to urine testing for drug and alcohol use.   Angela Brun of the Winnebago County Adult Probation Department explained the precautions taken to ensure valid testing.   A probationer subject to urine testing was required to call a phone number every morning to learn whether he or she would be ordered to provide a urine "drop" that day.   If a probationer was ordered to provide a sample, he or she was required to report to the probation office, where an employee of the testing company accompanied him or her to a restroom to watch the probationer urinate into a cup.

¶ 4     On February 9, 2017, defendant was ordered to provide a urine sample.   Devonte Meadows, an employee of the testing company, accompanied defendant to a restroom to supervise the sample collection.   Meadows quickly noticed that defendant was dispensing his sample from a plastic device that superficially resembled a penis.   The sample had the appearance of urine. Meadows accepted the sample as usual but called security as soon as defendant was out of sight. He discarded the sample on the instruction of someone from the Winnebago County Sheriff's Office.

¶ 5     As he left, defendant was stopped by sheriff's deputies.   He was handcuffed to a bench in a detention area near the building's front desk.   A sheriff's deputy, Dennis Hill, then escorted defendant to the jail and asked for the device.   Defendant told Hill that he did not have it because "people in the probation area or the urinalysis area had taken it from him."   Hill searched the detention area and found the device in a garbage can near the bench to which defendant had been handcuffed.   Hill identified the device as a "Whizzinator," which consisted of a plastic object

shaped like a penis. A tube connected the device to a bag, and a waistband secured the device. Hill saw a small amount of fluid in the bag and in the tube.

¶ 6       The trial court found defendant guilty. The court cited Hill's testimony that defendant said that others had taken the device from him, thus indirectly admitting that he had it before. The court found that defendant's use of the device was circumstantial evidence of his intent to defeat the urine test. The court sentenced defendant to two years' imprisonment, and defendant timely appealed.

¶ 7                                    II. ANALYSIS

¶ 8       Defendant was convicted under section 17-57(a)(2) of a single count of defrauding a drug or alcohol screening test. That section provides that it is unlawful for a person to "substitute or spike a sample or advertise a sample substitution or other spiking device or measure, with the intent of attempting to foil or defeat a drug or alcohol screening test." 720 ILCS 5/17-57(a)(2) (West 2016).

¶ 9       The original indictment alleged that defendant "knowingly substituted or spiked a sample *** with the intent of attempting to foil or defeat a drug or alcohol screening test, in that the defendant wore and used a device that dispensed urine that was not his own urine." The State amended the indictment to allege that defendant "wore and used a device that dispensed a liquid." Defendant objected to this amendment, but the court ruled that it was a matter of "form over substance."

¶ 10     On appeal, defendant admits that he used the device to dispense a liquid for testing, but he argues that his conviction must be reversed because the State failed to prove that the fluid it dispensed was not his urine. He asserts that the commonly understood definition of "substitute" requires the replacement of one thing by a *different* thing. Defendant concludes that the State did

not prove that he "substitute[d]" (720 ILCS 5/17-57(a)(2) (West 2016)) anything for the test sample, as is required for a conviction under section 17-57(a)(2) of the Code.

¶ 11 Defendant concedes that he *intended* to substitute a fraudulent sample, but he challenges, as a matter of law, the trial court's inference that he achieved that substitution. He argues that the court's inference relied on an incorrect understanding of what "substitute" means and was prohibited under section 17-57(b) of the Code.

¶ 12 The parties agree that our review is *de novo* because the issues involve applying the law to undisputed facts. We agree with the parties that our review is *de novo*. See *People v. Smith*, 191 Ill. 2d 408, 411 (2000) ("Because the facts are not in dispute, defendant's guilt is a question of law, which we review *de novo*."). However, we reject both of defendant's arguments.

¶ 13 Defendant argues that, under the dictionary definition of "substitute," something can be "substituted" only when "one item [is] replaced by another, different item." Defendant argues that a urine sample is a "substitute" under the statute only if it is produced by someone other than the testing subject. In other words, defendant claims that any urine sample from a single individual is inherently the same as any other sample from that person. He thus contends that it is impossible as a matter of law for one sample from a given individual to be "substituted" for a sample from the same person. This argument both produces an absurd result and fails logically.

¶ 14 Defendant claims that the legislature did not criminalize the submission of one's own previously collected urine to cause a screening test to register a false negative. However, if that were true, the purpose of section 17-57(a) would be largely defeated, at least as it applies to urine testing. We are not so bound to plain-language statutory interpretations that we must rigidly follow a provision's language to an absurd result. See, *e.g.*, *People v. Vara*, 2016 IL App (2d)

140849, ¶ 34 (we must presume that the legislature does not intend an absurd result). Regardless of that, defendant's argument about the provision's meaning is based on a false premise.

¶ 15   Defendant's argument is premised on the assumption that, for purposes of compliance with the statute, one sample of a person's urine is identical to all other samples of that person's urine. We reject this assumption. The content of a person's urine varies from day to day and hour to hour based on, for instance, what that person has consumed. This is the premise upon which drug and alcohol screening tests are based and why test scheduling is randomized and concealed from the subjects until the last minute. The change in a person's urine over time also explains why a probationer might attempt to defraud the test by providing an old, clean sample of his or her urine. Given the inherent differences of samples, which depend on when they are collected, it is absurd to say that a previously collected sample of a probationer's urine is the *same thing* as a fresh sample. Even under defendant's definition, providing an old urine sample qualifies as a "substitution" for a new sample, even if both samples are from the same person.

¶ 16   Defendant also argues that section 17-57(b) (720 ILCS 5/17-57(b)(West 2016)) must be read so that "evidence of a device may be used *only* to 'infer *an intent* to violate' section [17-57](a)(2) when [a device] accompanies a sample." (Emphases added.) Put another way, he contends that the "possession or use of a device" may serve as proof of the *intent* to defeat a drug test but cannot serve as proof of the *substitution* of a sample. This proposed interpretation of section 17-57(b) as limiting reasonable inferences by the trier of fact is unpersuasive.

¶ 17   Section 17-57(b) provides:

> "The trier of fact may infer intent to violate this Section if a heating element or any other device used to thwart a drug or alcohol screening test accompanies the sale, giving, distribution, or marketing of synthetic or human substances or other products[,] or

instructions that provide a method for thwarting a drug or alcohol screening test accompany the sale, giving, distribution, or marketing of synthetic or human substances or other products." 720 ILCS 5/17-57(b) (West 2016).

The language of this section is notably convoluted; indeed, the final clause appears to be the result of a proofreading error. However, the section makes clear that a trier of fact may infer a defendant's intent to violate the provision from his or her delivery together, or marketing together, of items or instructions used to thwart drug and alcohol screening tests. Thus, for instance, a defendant's sale of a urine substitute together with a heating element and instructions on how to warm the urine substitute to body temperature would allow a trier of fact to infer that the defendant intended to violate parts of section 17-57(a) relating to marketing or delivery.

¶ 18 Despite the confusing language, the clear purpose of section 17-57(b) is to allow the inference of criminal intent when certain items are bundled—sold or marketed in kits to defeat screening tests. The section reflects that many items that might be used to thwart screening tests, such as small heaters or chemicals suitable for producing urine substitutes, individually have licit uses. Defendant asks us to read section 17-57(b) to bar triers of fact from making otherwise proper inferences from defendants' possession of devices useful for thwarting screening tests. The legislature had no plausible reason to limit such inferences, and we reject that reading as producing an absurd or inconvenient result. See *Vara*, 2016 IL App (2d) 140849, ¶ 34.

¶ 19 We hold that a substitution under section 17-57(a)(2) does not require proof that the substance submitted during a screening test is not the urine of the person being tested. We further hold that section 17-57(b) does not bar a trier of fact from inferring that a person who uses a device like a Whizzinator to provide a urine sample has made a substitution under the statute. Accordingly, we affirm defendant's conviction.

¶ 20                                   III. CONCLUSION

¶ 21     For the reasons stated, we affirm the judgment of the circuit court of Winnebago County.

¶ 22     Affirmed.

## No. 2-18-0182

| | |
|---|---|
| **Cite as:** | *People v. Pearson*, 2020 IL App (2d) 180182 |
| **Decision Under Review:** | Appeal from the Circuit Court of Winnebago County, No. 17-CF-337; the Hon. Brendan A. Maher, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, R. Christopher White and Zachary Wallace (law student), of State Appellate Defender's Office, of Elgin, for appellant. |
| **Attorneys for Appellee:** | Marilyn Hite Ross, State's Attorney, of Rockford (Patrick Delfino, Edward R. Psenicka, and John G. Barrett, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |