NOTICE
Decision filed 11/07/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230535-U

NO. 5-23-0535

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 21-CF-209 |
| | ) | |
| TYRECO S. GARRY, | ) | Honorable |
| | ) | Thomas E. Griffith Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MOORE delivered the judgment of the court.
Justices Welch and McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The plain-error doctrine does not apply where no error was committed by the trial court in fashioning the defendant's sentence for armed violence. Accordingly, the defendant cannot prevail on his claim that counsel was ineffective for failing to file a motion to reconsider sentence.

¶ 2    The defendant, Tyreco S. Garry, appeals his sentence, following a bench trial in the circuit court of Macon County, Illinois, for the offense of armed violence. For the following reasons, we affirm.

¶ 3                              I. BACKGROUND

¶ 4    The facts necessary to our disposition of this timely appeal set forth that on February 22, 2021, the defendant was charged by information with four counts. Count I alleged that on February 18, 2021, the defendant committed armed violence, in that he knowingly and unlawfully had in his

1

possession more than 100 grams, but not more than 500 grams, of a substance containing cannabis, other than as authorized in the Cannabis Control Act, while armed with a dangerous weapon, a Glock model 45 handgun. Count II alleged that on February 18, 2021, the defendant committed the offense of armed habitual criminal, in that the defendant, a person who has been convicted of the offenses of unlawful possession by felons and armed robbery, knowingly possessed a firearm, a Glock model 45 handgun. Lastly, counts III and IV set forth that the defendant committed the offense of aggravated resisting a peace officer, in that defendant knowingly resisted arrest by officers who were engaged in the execution of their official duties.

¶ 5    On November 10, 2022, the defendant waived his right to a trial by jury and requested a bench trial. On April 19, 2023, the defendant's bench trial began. Because the issues raised by the defendant on appeal do not concern the evidence presented at the defendant's bench trial or the conduct of the parties at trial—and because an understanding of that evidence and conduct is not necessary to our disposition of the issues raised by the defendant—we need not discuss the defendant's bench trial in detail. It is sufficient to note that the State presented evidence in support of its theory that the defendant was guilty of counts I-IV, and counsel for the defendant presented evidence in rebuttal. On April 19, 2023, the trial court continued the defendant's case to May 3, 2023, for closing arguments. Following arguments, the trial court found the evidence sufficient to prove the defendant guilty beyond a reasonable doubt as to counts I, III, and IV.

¶ 6    Regarding count II, armed habitual criminal, the trial court found that the defendant's juvenile adjudication was not a conviction that satisfied the predicate felony offense requirement of the armed habitual statute. Moreover, the trial court found the evidence insufficient to prove the defendant guilty beyond a reasonable doubt. The trial court then set a sentencing hearing for the defendant to occur on July 13, 2023.

¶ 7    On July 12, 2023, the defendant filed a motion for judgment notwithstanding the verdict. The memorandum in support thereof is absent from the record before this court. After denying the defendant's motion on July 13, 2023, the trial court informed the State and the defendant that it believed the sentencing range would be 15-30 years. It was then agreed by both parties that any sentence as to counts III and IV would run concurrent with count I, and the trial court proceeded with sentencing.

¶ 8    The State began the defendant's sentencing hearing by calling detective James Weddle, for evidence in aggravation. Weddle testified that he was employed with the Decatur Police Department as a detective, with the primary duty of following up on officer reports, including a report involving the defendant.

¶ 9    Regarding this report, Weddle testified that on or about December 22, 2020, officers were dispatched to a neighborhood regarding a shooting that occurred. The report detailed roughly 46 shell casings were recovered. Weddle testified that the report indicated an individual by the name of Jayleon Cummings was discovered dead, seated in a vehicle, and with multiple gunshot wounds that were later autopsied to be his cause of death. Reportedly, previously seated in the passenger side of the vehicle was Jabron Hayes. Hayes told reporting officers he and Cummings were to meet at the home of Brogerick Johnson to assist in moving items, which Weddle inferred to be illegal because the defendant was known to be affiliated with drug related activity.

¶ 10    Weddle testified that an interview was conducted with Johnson, who made a statement to officers about the incident involving Cummings' death. Johnson stated that he was in the neighborhood at the time of the shooting, and saw two subjects, one being the defendant, emerge with rifles and begin firing at the vehicle Cummings and Hayes were seated in. Further, Weddle

testified that Johnson told reporting officers that the defendant had Facebook messaged him with pictures of loaded guns.

¶ 11　Further, Weddle testified that a cellular device, owned by the defendant, was reportedly recovered from the scene of the incident by responding officers. An extraction of the defendant's cellular device for discoverable information was conducted. And according to the testimony of Officer Weddle, there was a recording of the vehicle that Cummings was found deceased in that was taken five hours prior to the homicide. Weddle testified that he reviewed the recording and affirmed the fact that the recording contained audio. The audio was of two men reading the license plate of the vehicle Cummings was found deceased in.

¶ 12　On cross-examination, defense counsel inquired into the items to be moved from Johnson's home and their inferred illegality. Weddle testified that the items were firearms and cannabis. Further, Weddle testified that in addition to the photos, videos, and Johnson's statement identifying the defendant, there were also a series of text messages from the defendant instructing Johnson to grab a gun. Furthermore, there was a text message sent shortly before the homicide that said the location of Johnson's home.

¶ 13　The State then elicited testimony from witness Corey Maloney as evidence in aggravation. Maloney testified that he was a sergeant for the Macon County sheriff's office, corrections division. As a sergeant, Maloney's daily duties consist of monitoring jail progress, reviewing disciplinary reports, and "just [the] day-to-day operations of making sure the jail runs smooth and safe."

¶ 14　Regarding disciplinary reports specifically, Maloney testified that when he is on shift, it is his responsibility to review, correct, approve, or deny the reports for the jail's maintenance system. Maloney testified that the defendant was currently housed in the Macon County jail, and although

4

he cannot recall specific reports, Maloney testified that he recalls reviewing "quite a few" reports involving the defendant.

¶ 15    Upon refreshed recollection, Maloney testified that the defendant was more of a management problem for administration and command, rather than a model citizen. In support of this assertion, Maloney confirmed that the defendant had multiple disciplinary reports. Maloney testified that although the defendant is communicative, the defendant "simply makes poor decisions and is around individuals *** that wind up getting *** [discipline] imposed on himself."

¶ 16    Further, Maloney told the court that the defendant had been housed in different areas of the jail, including the segregation unit. Maloney testified that the defendant had been housed in the segregation unit roughly five times for violent acts. Maloney testified that such an act occurred on or about February 11, 2023.

¶ 17    On or about February 11, 2023, the defendant reportedly did not want to be taken back to his cell and the defendant told a correctional officer, "watch your back, because my Glock go boom boom." When asked for further elaboration, the defendant said, "watch what I do with those milk cartons when you walk by." As a result, the defendant lost privileges for a maximum of 10 days.

¶ 18    On cross-examination, Maloney testified he had worked in the jail for roughly 18 years, and typically a phrase such as "watch what I do with those milk cartons when you walk by" indicates that the milk cartons are going to be thrown or used as some kind of defiant act or behavior.

¶ 19    As evidence in mitigation, the defendant called Shylin Murphy. Murphy testified that he had been working as a barber for six years in Decatur, Illinois. Murphy testified that the defendant showed him how to cut hair in hopes that cutting hair would get Murphy "off the streets." At the time of his testimony, Murphy was no longer "out on the streets."

5

¶ 20    Next, the defendant testified on his own behalf. At the time of defendant's testimony, the defendant was not employed. The defendant testified that he has six children, three of which are biological. The defendant testified that the mother of his children does not allow him to see his children while he is incarcerated.

¶ 21    Prior to the defendant's incarceration, the defendant told the court that he cut hair. The defendant testified regarding Murphy's testimony and indicated that he and Murphy have known each other their whole lives because they are related. Growing up, the defendant testified that the two did not have the most ideal guidance. At some point, he and Murphy were incarcerated and housed in the Graham Correctional Center. It was during this time that the defendant took Murphy "under his wing" and taught him how to cut hair with the hopes of keeping him "off the streets." And thus far, according to the defendant, Murphy has not been incarcerated.

¶ 22    To touch more on the defendant's upbringing, the defendant testified that he was raised in a good home, along with his older brother and sister. At a very young age, his father died, and his mother remarried a man who was in prison by the time the defendant was 11. At that point, the defendant testified that he "changed" and was "trying to survive."

¶ 23    Defendant testified that he committed residential burglary at the age of 13. In testifying as to why the defendant chose to commit residential burglary at such a young age, the defendant told the court, "When I seen my mom struggling and I wanted to step up and kind of take some of the weight off of her." Around the same time, the defendant testified that he would steal coins from cars to buy groceries. For these crimes, the defendant was placed on probation by the juvenile court.

¶ 24    Further, the defendant did not dispute that he had a Glock model 45 handgun on or about February 18, 2021. The defendant testified that he chose to possess a gun because he wanted to

protect himself "in case any trouble came [his] way." On cross-examination, the defendant confirmed his prior criminal history, which included juvenile adjudications, and testified that he pled guilty to armed robbery, a Class X felony, in 2012.

¶ 25 Following this testimony, the defendant made a statement of allocution at which point the defendant apologized personally to his mother. He expressed that, "I don't have the same situation as everybody else," and rhetorically asked, "How can you judge me based off of someone [coming] and *** [saying], ['] oh, Mr. Garry did this,['] when [the State has] no evidence *** to convict me ***." The defendant went on to state that he is "facing *** life for something that [the State cannot] find [him] guilty of, such as a murder, but [the State is] going to use it to try and get [him] the maximum sentence on this case." Upon hearing the recommendations of both the defendant and the State, the defendant was sentenced to 20 years in the Illinois Department of Corrections (IDOC), followed by 18 months mandatory supervised release. In arriving to the defendant's sentence, the trial court explained that it considered the evidence in aggravation and mitigation, as well as the presentencing investigation report. Additional facts will be provided in the analysis, if necessary.

¶ 26                                    II. ANALYSIS

¶ 27 On appeal, the defendant argues that the trial court's sentence was excessive, and thus an abuse of discretion, because the trial court gave undue weight to improper aggravating factors, and the sentence indicates that the trial court failed to adequately consider the defendant's rehabilitative potential and relevant mitigating factors. Additionally, the defendant argues that his defense counsel was ineffective for failing to file a posttrial motion to reconsider his sentence. The State argues that this court should affirm the defendant's 20-year sentence as the imposition of the sentence was not an abuse of the trial court's discretion.

7

¶ 28    As an initial matter, we note that the defendant failed to file a written posttrial motion to reconsider his sentence. To preserve a claim of sentencing error, a defendant must make a contemporaneous objection and file a written postsentencing motion raising the issues. *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). Here, the defendant acknowledges his failure to preserve his claim of sentencing error on appeal; however, he argues that his claim is reviewable under the plain-error doctrine.

¶ 29    The plain-error doctrine is a narrow and limited exception. *Id.* at 545. To obtain relief under this rule, a defendant must first show that a clear or obvious error occurred. *Id.* In the sentencing context, a defendant must then show either that (1) the evidence at the sentencing hearing was closely balanced or (2) the error was so egregious as to deny the defendant a fair sentencing hearing. *Id.* Under both prongs of the plain-error doctrine, the defendant has the burden of persuasion. *Id.* However plain-error review is not applicable where there has been no error at all. *People v. Herron*, 215 Ill. 2d 167, 176 (2005). Therefore, to determine whether the plain-error doctrine applies in this case, the first step is determining whether an error occurred. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010)

¶ 30    The defendant asserts that his 20-year sentence was excessive in light of the mitigating evidence presented to the court and nature of the crime. Specifically, the defendant first argues that his sentence was excessive because it greatly varies from the spirit and purpose of the law. In support of this argument, the defendant asserts that a 20-year sentence was not warranted where (1) his conduct did not cause harm, or threaten to cause harm, to any person, bystander, or police; (2) there was "no potential for violence" where the defendant had possession of cannabis, which is now legal in small amounts; (3) despite his felon status, he only possessed the firearm for self-protection; and (4) his conviction was premised on the "mere possession of otherwise legal items

8

—cannabis and a handgun." In addition, the defendant argues that his sentence shocks the moral sense of the community because the trial court (1) improperly emphasized his juvenile record during the sentencing hearing and (2) gave undue weight to evidence of a pending murder charge. He argues that he does not have a significant criminal record that would warrant a sentence of 20 years, and he is categorically less culpable for his convictions as a juvenile. The defendant also argues that the trial court erred by relying "predominately on the testimony of Weddle disclosing uncorroborated evidence of [the defendant's] involvement in the Cummings shooting," for which he had a pending charge. Lastly, the defendant argues that his sentence is excessive because it does not reflect his potential for rehabilitation. In support of this argument, the defendant claims that the trial court failed to balance the retributive and rehabilitative purpose of its sentence by failing to adequately consider the significant mitigation evidence presented at the hearing.

¶ 31     In response, the State first notes that (1) the defendant is a convicted felon and cannot possess a firearm, (2) he has a previous conviction for possessing a firearm as a felon, and (3) in this case, he was found in possession of a loaded firearm and 156 grams of cannabis and admitted to purchasing the firearm for "protection." In addition, the State highlights that the armed violence statute recognizes that firearms significantly increase the "potential" for harm to persons when used to facilitate the commission of a criminal offense. The State argues that here the defendant admitted that he purchased the firearm for "protection" and that such protection was necessary due to the defendant's illegal activity of possessing a felony amount of cannabis. Further, the State argues that evidence of the defendant fleeing from officers, failing to comply with commands, struggling with and resisting officers, and causing injuries to the officers all while being in possession of a concealed firearm, significantly escalated the risks involved. In addition, the State argues that the defendant's juvenile record was properly considered and there is no evidence that

9

the trial court improperly emphasized it. Further, the State argues that the in-person testimony of Detective Weddle regarding the defendant's pending murder charge was reliable and relevant, satisfied the admissibility requirements at sentencing, and provided the court an opportunity to assess the defendant's character. Lastly, the State claims that defendant fails to provide any evidence that the trial court failed to balance the retributive and rehabilitative purpose of its punishment where the record indicates the trial court noted its careful consideration of the evidence and all the factors presented during the sentencing hearing, and where the trial court is not required to recite or detail each factor or argument presented at sentencing.

¶ 32     It is well settled that the trial court is afforded broad discretionary powers in imposing a sentence, and a trial court's sentencing decision will not be disturbed upon review absent an abuse of discretion. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000); *People v. Steffens*, 131 Ill. App. 3d 141, 151 (1985). An abuse of discretion will be found only where the sentencing court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Hall*, 195 Ill. 2d 1, 20 (2000). The trial court is granted such deference because it is generally in a better position than the reviewing court to determine the appropriate sentence, as it has the opportunity to weigh factors such as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *Stacey*, 193 Ill. 2d at 209. Consequently, a reviewing court may not overturn a sentence merely because it might have weighed the pertinent factors differently. *People v. McGowan*, 2013 IL App (2d) 111083, ¶ 10.

¶ 33     Although the trial court is afforded broad discretion in sentencing, such discretion is not without limitation. *Stacey*, 193 Ill. 2d at 209. Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1, 1967) grants reviewing courts the power to reduce an excessive sentence. *Steffens*, 131 Ill. App.

3d at 151. However, that power should be exercised cautiously and sparingly. *People v. Alexand*er, 239 Ill. 2d 205, 212 (2010).

¶ 34    Illinois courts recognize that sentences are presumed to be proper. *People v. Boclair*, 225 Ill. App. 3d 331, 335 (1992). When a sentence imposed falls within the statutorily prescribed range, it will not be found to be excessive or an abuse of discretion unless the sentence greatly varies from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *People v. Weiser*, 2013 IL App (5th) 120055, ¶ 33. In other words, an abuse of discretion may be found, even if the sentence is within the statutory range, if it is contrary to the purpose and spirit of the law. *Id.* The spirit and purpose of the law are promoted when the trial court's sentence reflects both the seriousness of the offense and gives sufficient consideration to the defendant's rehabilitative potential. *Boclair*, 225 Ill. App. 3d at 335. The seriousness of the offense is one of the most important factors for the court to consider. *Weiser*, 2013 IL App (5th) 120055, ¶ 32.

¶ 35    Further, if mitigating evidence is presented at the sentencing hearing, a reviewing court presumes the trial court considered that evidence, absent some contrary evidence. *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 29. The trial court is not required to recite or assign a value to each factor presented at the sentencing hearing. *Id.* The defendant bears the burden to affirmatively establish that the sentence was based on improper considerations, and we will not reverse a sentence imposed by a trial court unless it is clearly evident the sentence was improper. *Id.*

¶ 36    Applying these principles to the instant case, we cannot say the trial court's 20-year sentence was excessive or an abuse of discretion. Defendant was convicted of armed violence, a Class X felony, which carries a sentencing range of 15 to 30 years. 720 ILCS 5/33A-3(a) (West 2020). Therefore, the defendant's 20-year sentence is presumed proper since it falls within the

11

statutory range for the offense. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. We note that the defendant's 20-year sentence falls in the lower to mid-range of the sentencing guidelines, where the midpoint is 22.5 years. In addition, we note that the defendant does not raise the issue of his conviction of armed violence.[1] Moreover, the defendant concedes that he was armed with a dangerous weapon on February 18, 2021, and purchased the dangerous weapon two days prior to his arrest for self-protection.

¶ 37    Further, the record reveals that in sentencing the defendant, the trial judge properly considered the nature and circumstances of the offense as well as the defendant's mitigating and aggravating factors. Regarding the defendant's mitigating factors, the defendant argues, *inter alia*, that the trial court failed to consider the defendant's GED achievements, upbringing, employability, and contributions to the Decatur community through the defendant's training of barbers.

¶ 38    However, the record indicates that the trial court acknowledged the defendant's GED achievements by indicating that he is "very intelligent." The trial court went on to immediately state, verbatim, "I'm from a much different background. I wasn't trying to take care of myself at 11 years of age on the street ***. *** [The defendant] has worked cutting hair in the past. He's apparently helped other people." Also, regarding the defendant's mitigating factors, the defendant argues that the trial court failed to consider the defendant's expression of remorse. Although the defendant argues that he apologized to the court and his mother, the trial court is best situated to determine whether the defendant's remarks were in fact genuine. The trial court, upon sentencing the defendant, indicated that it had not heard "anything about acceptance of responsibility for this

---

[1]Defendant does not argue that his sentence for counts III and IV is excessive. Nor does defendant dispute the evidence supporting the convictions of count III and IV.

12

case." This is supported by the defendant's testimony at his sentencing hearing where one could interpret the defendant's remarks as disingenuous. At defendant's sentencing hearing, defendant made a statement of allocution at which he expressed, "I don't have the same situation as everybody else," and rhetorically asked, "How can you judge me based off of someone [coming] and *** [saying,] [']oh, Mr. Garry did this,['] when [the State has] no evidence *** to convict me ***." The defendant went on to state that he is "facing *** life for something that [the State cannot] find [him] guilty of, such as a murder, but [the State is] going to use it to try and get [him] the maximum sentence on this case."

¶ 39    Additionally, the trial court also considered the seriousness of armed violence and highlighted the defendant's criminal history. The trial court noted that the defendant experienced "a life of guns, drugs, and violence to some degree." The trial court subsequently stated that in addition to his juvenile charges, the defendant had been prosecuted, as an adult, for a weapons case.[2] Specifically, regarding the defendant's criminal history as to the Cummings shooting, the court was cognizant of the fact that at the time of the defendant's sentencing, it did not know whether the defendant would be prosecuted for the Cummings shooting.[3] Moreover, the trial court explicitly detailed that it was not determining whether there was proof beyond a reasonable doubt as to the defendant's involvement with the Cummings shooting. However, the trial court found "*some evidence*" that the defendant was involved. (Emphasis added.) The trial court may rely on evidence of a defendant's other criminal history, even if that conduct has not resulted in a

---

[2]Defendant pled guilty to felony possession of a firearm, a Class 2 felony, on or about March 8, 2018.

[3]We note that during the pendency of this appeal, the defendant pled guilty to second degree murder, a Class 1 felony on April 25, 2024, in the above-mentioned case. The defendant was sentenced to 20 years in IDOC to run concurrent with the armed violence conviction set forth in this appeal.

conviction, where the trial court finds the evidence to be relevant and accurate. *People v. La Pointe*, 88 Ill. 2d 482, 498-99, (1981).

¶ 40    To reiterate, we presume that the trial court considered all relevant mitigating evidence, absent a showing to the contrary. *Etherton*, 2017 IL App (5th) 140427, ¶ 29. The defendant essentially asks this court to reweigh the evidence at sentencing and assign greater weight to the mitigating evidence than did the trial court. This we will not do. We are not authorized to reduce a sentence merely because we may have weighed the relevant factors differently. *People v. Busse*, 2016 IL App (1st) 142941, ¶ 20. It is the trial court's duty—not ours—to weigh the mitigating and aggravating factors and to make a reasoned decision as to the appropriate sentence.

¶ 41    Further, and aside from the fact that the trial court explicitly stated that it had considered all the relevant evidence in mitigation, the mere presence of mitigating factors does not require a minimum sentence or hinder the imposition of the maximum sentence. *People v. Brewer*, 2013 IL App (1st) 072821, ¶ 57. Nor is the trial court required to award a defendant's mitigating factors greater weight than the seriousness of the offense and a defendant's criminal history when sentencing a defendant. *People v. Bryant*, 2016 IL App (1st) 140421, ¶ 17.

¶ 42    Furthermore, the trial court is not required to explain for the record the process by which it concluded the defendant's sentence appropriate. *Etherton*, 2017 IL App (5th) 140427, ¶ 33. And importantly, when asked if the trial court needs to expand as to its account of its sentencing decision, on record, the defendant's only request was for the trial court to make a recommendation for substance abuse treatment, which it granted.

¶ 43    Accordingly, the trial court was well within its discretion when sentencing the defendant. For this reason, we find that no error was committed during the defendant's sentencing and reject the defendant's argument in favor of plain-error review.

¶ 44 Lastly, the defendant also seeks to avoid forfeiture by claiming his lawyer was ineffective for failing to file a posttrial motion to reconsider his sentence. For a successful claim of ineffective assistance of counsel, the defendant must demonstrate that his counsel's performance fell below an objective standard of reasonableness, rendering the counsel's performance deficient and therefore prejudicial. *People v. Rollins*, 2024 IL App (2d) 230372, ¶ 20. In the context of ineffective assistance claims, prejudice is found when the defendant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.*

¶ 45 This court has determined that the trial court did not abuse its discretion when sentencing the defendant. Thus, defense counsel's failure to preserve the claimed sentencing errors did not cause prejudice because there was no abuse of discretion in the court's sentencing decision. Accordingly, the defendant cannot avoid forfeiture because he cannot prevail on his claim that counsel was ineffective.

¶ 46                                    III. CONCLUSION

¶ 47 Based on the foregoing, we affirm the sentence of the trial court of Macon County.


¶ 48 Affirmed.