# Illinois Official Reports

## Appellate Court

---

### *People v. Vara*, 2016 IL App (2d) 140849

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICARDO VARA, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-14-0849 |
| Filed | December 21, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Stephenson County, No. 13-CF-28; the Hon. Michael P. Bald, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Thomas A. Lilien, and Jaime L. Montgomery, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Carl H. Larson, State's Attorney, of Freeport (Lawrence M. Bauer and Marshall M. Stevens, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE SPENCE delivered the judgment of the court, with opinion. Justices Burke and Birkett concurred in the judgment and opinion. |

**OPINION**

¶ 1        This case presents a matter of statutory construction. Defendant, Ricardo Vara, was convicted of grooming pursuant to section 11-25 of the Criminal Code of 2012 (Code) (720 ILCS 5/11-25 (West 2012)), in that he sent a text message to J.D., an 11-year-old girl, stating that he wanted to make love to her "pink hot pussy." On appeal, defendant argues solely that, to be convicted of grooming, section 11-25 required that he enticed J.D. in order that *J.D.* commit a sex offense. Because we interpret the statute as requiring that defendant enticed J.D. to engage in sexual conduct with defendant—in order that *defendant* could commit a sex offense—we affirm.

¶ 2                                I. BACKGROUND

¶ 3        Defendant was charged with one count of grooming pursuant to section 11-25 of the Code (the grooming statute). *Id.* The State alleged that on or about January 14, 2013, defendant:

> "knowingly used a *** cellular device to entice J.D. a child, to commit the offense of Predatory Criminal Sexual Assault of a Child, in violation of 720 ILCS 5/11-1.40, in that he sent a text message to J.D.'s phone stating that he wanted to make love to 'ur pink hot pussy.' "

¶ 4        On May 13, 2014, defendant waived his right to a jury trial, and the case proceeded to a stipulated bench trial. The State provided the following evidence, and defense counsel agreed that the State's witnesses, if called, would testify in substantially the same manner. First, Freeport police officer Coplien would testify as follows. On February 5, 2013, Coplien responded to a complaint of explicit text messages sent to J.D. Upon arriving at the complainant's home, Coplien saw defendant standing outside. Defendant's date of birth was August 14, 1955. Coplien spoke with defendant, and defendant told him that he had made a mistake by sending a text message to the wrong person.

¶ 5        Coplien then went inside and spoke to J.D.'s parents. Nicole M. was J.D.'s mother. Nicole told Coplien that J.D. had shown Nicole her cellular phone. J.D. had received text messages that upset her. It was later determined that the text messages came from defendant's phone number. Nicole gave Coplien J.D.'s phone.

¶ 6        One of the text messages on J.D.'s phone read, verbatim: "I'w say yes jazzy I wih I was thar making love to ur pink hot pussy Come-On jazz.u now u got to cl I'w be work win u cl.But cl after, 430 . &Beeztw8 9.I'wse." The message was sent from defendant's phone number on January 14, 2013. J.D. replied with several text messages to defendant, sending the following on January 23, 2013: "Why do u keep sending me dirty messages," "Can u answer that," and "why do u want me to call." The messages were signed "YOLO:)loljazzymarieboo."

¶ 7        Nicole told Coplien that she confronted defendant about the messages sent to J.D.'s phone. Defendant claimed that he sent the messages by accident.

¶ 8        Coplien returned to defendant and asked to see his phone. Defendant allowed him to look at his text messages but did not allow him to handle his phone. Instead, defendant scrolled through the messages while Coplien observed. Based on his observations, including observing that the phone number on defendant's phone matched the phone number for the messages sent to J.D.'s phone, he arrested defendant and seized his phone. He placed defendant's and J.D.'s phones in the Freeport police department's evidence vault.

¶ 9 J.D. would testify as follows. She was 12 years old at the time of trial and 11 years old when she received defendant's text message from January 14, 2013. Defendant had been living with her and her family for a period of time, and he paid rent to her parents. Sometimes, defendant took her shopping and bought her gifts. He gave her a cell phone, paid the bill on the cell phone, and gave her a tablet computer. They spoke often. Defendant wanted J.D. to call and text him frequently. He was 57 years old when he sent her the text message in this case.

¶ 10 J.D. would identify the text message defendant sent to her cellular phone. She also would confirm the text messages that she sent to defendant. Defendant referred to her in his text message as "Jazzy" or "Jazz."

¶ 11 Next, defense counsel presented defendant's testimony, and the State agreed that defendant would testify as follows. Defendant had sent his text message to J.D. in error. The message was intended for two other individuals, Felicia C. and Jennifer D. He explained this to Coplien when they spoke on February 5, 2013.

¶ 12 Further, defendant would explain that some of the text messages on his phone were taken out of context and that some of the messages were intended for J.D.'s family in general, not specifically for J.D. He and the family had "a falling out" over some financial issues. Some money had been "misplaced." He would argue that money was the motivation behind this incident.

¶ 13 After the presentation of the stipulated evidence, the State argued that defendant knowingly used his cellular phone to entice J.D. in order to commit predatory criminal sexual assault of a child, in that his words proposed or encouraged coitus between J.D. and himself. Defense counsel responded in part by asking the court to rule whether the grooming statute reasonably placed defendant on notice of the offense charged.

¶ 14 The court found defendant guilty of grooming beyond a reasonable doubt. The court reasoned as follows. When the alleged offense occurred, J.D. was under the age of 13 and defendant was over the age of 18. The "single most damning piece of evidence" against defendant was the text message itself, which the court understood as intended for J.D.

¶ 15 Defendant moved for a new trial. He argued in part that the evidence did not establish his mental state, that is, that he sent the message to seduce, solicit, lure, or entice, or attempt to seduce, solicit, lure, or entice, J.D. to commit any sex offense. Defendant also moved to vacate his conviction, arguing that the State failed to present evidence necessary to establish the essential elements of the offense of grooming.

¶ 16 At a hearing on the motion to vacate the conviction, defense counsel argued that it was impossible for defendant to have committed the crime as delineated by the grooming statute. The statute required that a defendant entice a child to commit a sex offense. In particular, counsel argued, in this case, the statute required that the child was enticed to commit the crime of predatory criminal sexual assault of a child, making the child both the victim and the perpetrator. The court denied the motion to vacate the conviction.

¶ 17 At the hearing on the motion for a new trial, defense counsel again raised the issue of the statute's wording, describing it as a "poorly written statute" that was "very vague" because "asking a child to commit the crime would be an impossible thing." The State disagreed that the statute required that the child was enticed to commit any offense or that the wording of the statute was unconstitutionally vague. The court denied the motion, reasoning that the statute had survived constitutional challenges in the past.

¶ 18    Following a sentencing hearing, the court sentenced defendant to 24 months' imprisonment.

¶ 19    Defendant timely appealed.

¶ 20                                II. ANALYSIS

¶ 21    Defendant argues that the State did not prove an essential element of the offense of grooming, because it would be legally impossible for J.D. to commit a predatory criminal sexual assault, which the statute required that she be enticed to commit. Defendant does not contest the trial court's findings. Rather, his argument is based entirely on statutory construction. Questions of statutory construction are questions of law, which we review *de novo*. *People v. Gutman*, 2011 IL 110338, ¶ 12.

¶ 22    Defendant argues that section 11-25(a) of the Code required that J.D. personally was enticed to commit the offense of predatory criminal sexual assault. He first notes that the legislature did not define the terms "seduce, solicit, lure, or entice" in section 11-25 of the Code. However, the Code generally defines "solicit" in section 2-20 (720 ILCS 5/2-20 (West 2012)) as follows: " 'Solicit' or 'solicitation' means to command, authorize, urge, incite, request, or advise another to commit an offense." Unless the particular context of section 11-25 requires a different meaning for "solicit," we should ascribe the definition provided in section 2-20.

¶ 23    Defendant continues that section 11-25 does not define the terms "seduce," "entice," or "lure" and that therefore we must look to their popularly understood meanings. Citing the Merriam-Webster dictionary, defendant asserts that "seduce" means to persuade someone to do something, particularly to have sex. To "lure" is defined as to cause or persuade someone to go somewhere or do something by offering some pleasure or gain. And finally, "entice," when taken as a transitive verb, means to attract artfully or adroitly or by arousing hope or desire.

¶ 24    Defendant emphasizes that all of these terms, along with the section 2-20 definition of solicit, "have a common theme of persuading *someone* to do *something*." (Emphases in original.) Therefore, the plain language of the statute required that, in order for him to have committed grooming, he must have persuaded or attempted to persuade J.D. to commit a sex offense. Defendant also invokes the rule of lenity, in that an ambiguous criminal statute will generally be construed in the defendant's favor. *Gutman*, 2011 IL 110338, ¶ 12.

¶ 25    Defendant argues that, under the State's interpretation of the grooming statute, the offense is identical to the offense of indecent solicitation of a child under section 11-6 of the Code (720 ILCS 5/11-6 (West 2012)). Section 11-6(a) provides that a "person of the age of 17 years and upwards commits indecent solicitation of a child if the person, with the intent that the offense of *** predatory criminal sexual assault of a child *** be committed, knowingly solicits a child *** to perform an act of sexual penetration or sexual conduct." 720 ILCS 5/11-6(a) (West 2012). Under section 11-6(b), "solicit" includes commanding or urging another in person, over the phone, or by computer to perform an act. 720 ILCS 5/11-6(b) (West 2012). Defendant contrasts the definition of "solicit" in section 11-6(b) with the general definition of "solicit" found in section 2-20 of the Code (" 'Solicit' *** means to command *** another to commit an offense." (720 ILCS 5/2-20 (West 2012))). Whereas committing the offense of indecent solicitation of a child requires commanding a child to *perform an act*, the general definition of "solicit" under section 2-20 is to command another *to commit an offense*. Defendant concludes that the offense of indecent solicitation of a child involves the situation

- 4 -

where a defendant seeks to persuade a child to have sex with the defendant. Therefore, if we hold that grooming under section 11-25(a) also involves soliciting a child to have sex with the defendant, we will render section 11-6(a) superfluous.

¶ 26 Moreover, defendant argues that the State's statutory construction would lead to the absurdity of punishing the same crime in vastly different ways. Under the indecent solicitation of a child statute (720 ILCS 5/11-6(a) (West 2012)), if the solicited act would constitute a predatory criminal sexual assault, the offense is a Class 1 felony. On the other hand, any violation of the grooming statute (720 ILCS 5/11-25 (West 2012))—including solicitation of a predatory criminal sexual assault—is only a Class 4 felony. Such a disparity is unjust and raises constitutional concerns about proportionate penalties.

¶ 27 Defendant contends that his construction of these two statutes accounts for the different degrees of punishment and avoids questions of unconstitutionality. A defendant who solicits a child for the defendant to commit a predatory criminal sexual assault should receive a harsher punishment. On the other hand, under the grooming statute, a defendant is trying to solicit another person to commit a sex offense and is thus a degree removed from the solicited criminal act, warranting a lesser punishment. If the State wanted to punish defendant for soliciting J.D. to engage in a sexual act with him, it should have charged him under section 11-6(a) with indecent solicitation of a child.

¶ 28 Defendant acknowledges that the legislature "would have recognized that children cannot commit predatory criminal sexual assault of a child." However, he contends that the legislature drafted section 11-25(a) to include "any sex offense," which means any sex offense a child can commit. Defendant notes that children can commit sex offenses against other children. See, *e.g.*, *In re J.W.*, 204 Ill. 2d 50, 55 (2004) (12-year-old boy adjudicated delinquent for aggravated criminal sexual assault against two 7-year-old boys.).

¶ 29 Defendant concludes that, under the plain language of the grooming statute, the State had to show that defendant enticed J.D. to commit a sex offense that she was capable of committing against another person. Importantly, as charged, the enticed offense was predatory criminal sexual assault of a child. J.D. was 11 years old when she received defendant's text message, but in order to commit a predatory criminal sexual assault, J.D. had to have been at least 17 years old. Accordingly, it was impossible for J.D. to commit a predatory criminal sexual assault, and the State failed to prove that defendant was guilty of grooming.

¶ 30 The State responds as follows. The State has "no quarrel" with defendant's definitions of "seduce," "solicit," "lure," or "entice"; their meanings are clear. However, the State disagrees with defendant's reading of the grooming statute. The State emphasizes that the definitions of the words are no less important than the grammatical construction of the statute itself. Defendant's interpretation—that a defendant must act with the intent that someone else commit an offense—ignores the "all-important" comma before "to commit any sex offense." The statute provides: "A person commits *** grooming when he or she knowingly uses a computer on-line service *** to seduce, solicit, lure, or entice *** a child, a child's guardian, or another person believed by the person to be a child or a child's guardian, *to commit any sex offense* ***." (Emphasis added.) 720 ILCS 5/11-25(a) (West 2012). The comma denotes that the clause that follows it refers back to "a person" at the beginning of the sentence instead of to "a child" or "a child's guardian."

¶ 31 Next, the State disagrees that the indecent solicitation of a child statute defeats its interpretation of the grooming statute. First, a State's Attorney has discretion to prosecute

- 5 -

under either or both of two statutes that punish the same conduct differently. *People v. Roberts*, 27 Ill. App. 3d 489, 491 (1975). Furthermore, defendant's argument about proportionate penalties is inapplicable because the offenses of grooming and indecent solicitation of a child do not have identical elements. A proportionate penalties violation occurs only where two offenses have identical elements but disparate sentences. *People v. Blair*, 2013 IL 114122, ¶ 32. Here, grooming requires the use of an electronic storage or transmission device, whereas indecent solicitation can be committed in person, by telephone, in writing, or by computer. Grooming can be directed at a child or a child's guardian, or toward anyone believed to be a child or a child's guardian. On the other hand, indecent solicitation can be directed only at a child or one believed to be a child.

¶ 32 The State also cites the legislative history of the grooming statute, arguing that the legislature intended a flexible approach to preventing sexual abuse. Senate Bill 2382 created the offense of grooming in response to the fact that people were using the internet to meet and seduce children. See 95th Ill. Gen. Assem., House Proceedings, May 22, 2008, at 54-55.

¶ 33 Turning back to defendant's argument, the State agrees that it would be impossible for J.D. to commit the crime of predatory criminal sexual assault of a child. However, this simply demonstrates that defendant's construction of the statute is incorrect. Defendant's construction leads to an absurd result, which we presume the legislature did not intend. In enacting the grooming statute, the legislature was clearly concerned about acts committed by others against children, not acts committed by children.

¶ 34 We agree with the State. The primary objective of statutory construction is to ascertain and give effect to the legislature's intent. *Gutman*, 2011 IL 110338, ¶ 12. All other rules of statutory construction are subordinate to this cardinal principle. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 279 (2003). The most reliable indicator of legislative intent is the language of the statute itself, given its plain and ordinary meaning. *Gutman*, 2011 IL 110338, ¶ 12. Courts review the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation. *Id.* If possible, each word, clause, and sentence must be given a reasonable meaning and should not be rendered superfluous. *Id.* Courts may also consider the "underlying purpose of the statute's enactment, the evils sought to be remedied, and the consequences of construing the statute in one manner versus another." *People v. Garcia*, 241 Ill. 2d 416, 421 (2011). Further, we presume that the legislature did not intend to create absurd, inconvenient, or unjust results. *Id.* Finally, while under the rule of lenity, we generally construe ambiguous criminal statutes in favor of the defendant (*Gutman*, 2011 IL 110338, ¶ 12); the rule of lenity does not require a construction of the statute that defeats the legislative intent (*id.*; *People v. Jackson*, 2011 IL 110615, ¶ 21).

¶ 35 We must therefore attempt to ascertain the legislative intent, beginning with the language of the grooming statute itself. At the time of these events, section 11-25(a) provided:[1]

> "A person commits the offense of grooming when he or she knowingly uses a computer on-line service, Internet service, local bulletin board service, or any other device capable of electronic data storage or transmission to seduce, solicit, lure, or entice, or attempt to seduce, solicit, lure, or entice, a child, a child's guardian, or another person

---

[1]The legislature amended section 11-25 by enacting Pub. Act 98-919 (eff. Jan. 1, 2015). We quote the version of section 11-25 effective from January 1, 2009, to December 31, 2014, which is the version that applies to this case.

believed by the person to be a child or a child's guardian, to commit any sex offense as defined in Section 2 of the Sex Offender Registration Act or to otherwise engage in any unlawful sexual conduct with a child or with another person believed by the person to be a child." 720 ILCS 5/11-25(a) (West 2012).

Grooming was a Class 4 felony. 720 ILCS 5/11-25(b) (West 2012).

¶ 36    The plain language of the statute prohibits a defendant from, *inter alia*, using an electronic transmission device to solicit, lure, entice, or seduce a child in order to commit a sex offense. Defendant provides definitions for "solicit," "lure," "seduce," and "entice," and the State does not contest those definitions. However, we believe that the commonly understood meaning of an additional term aids our analysis: the definition of grooming itself.[2]

¶ 37    In the context of sexual abuse of a child, grooming is commonly understood as a method of building trust with a child or an adult around the child in an effort to gain access to the child, make the child a cooperative participant in the abuse, and reduce the chance that the abuse is detected or disclosed. See Common Questions, National Sex Offender Public Website, https://www.nsopw.gov/en-US/Education/CommonQuestions (last visited Nov. 2, 2016);[3] see also Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/groom (last visited Nov. 7, 2016) (as a transitive verb, groom means "to get into readiness for a specific objective"). Importantly, we construe the statute with an eye toward the evil the legislature sought to remedy (*Garcia*, 241 Ill. 2d at 421), and the plain language of the grooming statute makes clear that the legislature sought to prevent sexual abuse of children. Many other states share this understanding of grooming as a method used by sexual abusers to facilitate sexual abuse of children. See, *e.g.*, *State v. Coleman*, 276 P.3d 744, 749 (Idaho 2012) (in the context of a sexual abuse case, "grooming" meant "conduct intended to foster trust and remove defenses over time through a pattern of seduction and preparation, resulting in the child being willing and compliant to the defendant's sexual abuse"); *In re K.H.*, 119 Ohio St. 3d 538, 2008-Ohio-4825, 895 N.E.2d 809, at ¶ 24 (expert testified that the defendant was grooming the minor to be his victim, that is, planning and preparing her for sexual abuse); see also *State v. Swinney*, 345 P.3d 509, 553-54 (Or. Ct. App. 2015) (testimony that defendant groomed the victim, by increasing touching over time in order to sexually abuse the victim, was admissible); *State v. Akins*, 315 P.3d 868, 878 (Kan. 2014) ("Grooming is a well-known phenomenon in the context of sexual abuse.").

¶ 38    While we reach our decision under the plain language of the grooming statute, we agree with the State that our interpretation is consistent with the legislative history of the statute. In adopting section 11-25 of the Code, our legislature understood the danger grooming posed in the age of smartphones and online connectivity, whereby persons could use electronic

[2]We noted the State's argument regarding the placement of the comma after "or a child's guardian" and before "to commit any sex offense." While we agree that the comma indicates that "to commit a sex offense" refers back to the person accused of grooming, we do not believe that this grammatical construction is essential to determine the legislature's intent, given our interpretation of the plain language of the statute.

[3]The National Sex Offender Public Website is provided by the United States government. We may take judicial notice of this public website. See *People v. Crawford*, 2013 IL App (1st) 100310, ¶ 118 n.9 (utilizing Google Maps); see also *Innovative Garage Door Co. v. High Ranking Domains, LLC*, 2012 IL App (2d) 120117, ¶ 4 n.1 (taking judicial notice of defendant's website to address issue of jurisdiction).

communication and the Internet to target children for sexual abuse. See 95th Ill. Gen. Assem., House Proceedings, May 22, 2008, at 54-55. Representative Sid Mathias commented that Senate Bill 2382 was a response to situations that "you probably have watched I believe it's Dateline and how many people are using the Internet to try to meet underage children for . . . in order to entice them or seduce them to commit a sex offense." *Id.* at 54 (statements of Representative Mathias). Senate Bill 2382 addressed this type of situation by creating (1) the offense of grooming, which meant "using the Internet to try to seduce or entice a child" in order to commit a sex offense, and (2) the offense of traveling to meet a child for the purpose of engaging in a sex offense with the child. *Id.*

¶ 39     We also reject defendant's argument that the legislature's use of the word "solicit" in the grooming statute required that defendant urged J.D. to personally commit a sex offense. Under section 2-0.5 of the Code, a word or phrase defined by the Code will have the meaning provided by the Code, "except when a particular context clearly requires a different meaning." 720 ILCS 5/2-0.5 (West 2012). In this context, "solicit" clearly is not limited to urging a child to personally commit an offense. Such an interpretation directly conflicts with the common understanding of grooming as a method of preparing a child for sexual abuse. Rather, "solicit" as used in the grooming statute has its commonly understood meaning: to urge strongly, or to entice or lure, especially to evil. See Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/solicit (last visited Nov. 7, 2016).[4]

¶ 40     Even if the meaning of "solicit" in the grooming statute were ambiguous, defendant's argument would still fail. Under the doctrine of *noscitur a sociis*—*i.e.*, a word is known by the company it keeps—the meaning of a questionable word or phrase in a statute may be resolved by reference to the meanings of words or phrases associated with it. *People v. Qualls*, 365 Ill. App. 3d 1015, 1020 (2006). In the grooming statute, "solicit" is closely associated with "seduce," "lure," and "entice." Defendant and the State agree that "seduce" means to persuade someone to do something, particularly to have sex; "lure" means to persuade someone to go somewhere or do something by offering pleasure or gain; and "entice" means to attract by arousing hope or desire. Defendant argues that these words have a common theme in that all involve trying to persuade "someone to do something." We agree that this is a common theme. However, in the context of the grooming statute, it is clear that persuading "someone to do something" includes persuading a child to engage in sexual conduct with the defendant.

¶ 41     We further reject defendant's interpretation of the grooming statute because it would lead to an absurd result. Under defendant's interpretation, the child is the one who would have to commit a sex offense. Accordingly, the statute would punish the defendant for encouraging the child to have sex with another child *but not* punish him for encouraging the child to have sex with the defendant. Grooming is a method by which a person gains access to a child, builds trust with the child, and renders the child susceptible to sexual abuse. Therefore, an interpretation of the grooming statute whereby a defendant is allowed to have access to a child, build trust with the child, and encourage the child to have sex with the defendant, but not with others, is absurd.

¶ 42     Finally, we reject defendant's argument that the indecent solicitation of a child statute conflicts with the grooming statute. The State is correct that, when conduct is proscribed by

---

[4]In determining the plain, ordinary, and popularly understood meaning of a term, we may look to the dictionary for a definition. *People v. Bingham*, 2014 IL 115964, ¶ 55.

two statutes with different levels of punishment, a prosecutor has discretion to prosecute under either or both statutes. *Roberts*, 27 Ill. App. 3d at 491. Moreover, a proportionate penalties violation occurs only when " 'two offenses have identical elements but disparate sentences.' " *Blair*, 2013 IL 114122, ¶ 32 (quoting *People v. Hauschild*, 226 Ill. 2d 63, 85 (2007)).

¶ 43 The State cites elements that differ between the offenses of grooming and indecent solicitation of a child. The different elements in the grooming statute include that an electronic device is used and that grooming may be directed at a child's guardian, whereas indecent solicitation must be directed at a child (or one believed to be a child). We recognize these differences but also emphasize that the *actus reus* for each offense is fundamentally different. Indecent solicitation of a child involves knowingly soliciting "a child *** to perform an act of sexual penetration or sexual conduct." 720 ILCS 5/11-6(a) (West 2012). Importantly, indecent solicitation of a child requires that a defendant request that a child perform a sexual act. See *People v. Arndt*, 351 Ill. App. 3d 505, 514 (2004) (affirming conviction of indecent solicitation of a child where the defendant urged sexual penetration with the child). On the other hand, the grooming statute prohibits a person from knowingly using an electronic device to "seduce, solicit, lure, or entice" a child, with the goal being sexual relations with the child. 720 ILCS 5/11-25(a) (West 2012). Consistent with the common understanding of grooming as a method to prepare a child for sexual abuse, the grooming statute prohibits a broader range of conduct than does the indecent solicitation of a child statute. See Common Questions, National Sex Offender Public Website, https://www.nsopw.gov/en-US/Education/CommonQuestions (last visited Nov. 7, 2016) (common grooming behaviors include buying a child gifts, bathing a child, displaying favoritism, tickling and "accidentally" touching genitalia, telling sexually explicit jokes, discussing sex under the guise of education, showing a child sexually explicit pictures, and photographing a child in underwear or a bathing suit). Simply, indecent solicitation of a child requires urging, commanding, or requesting that a child perform a sexual act, but grooming does not. Accordingly, the grooming statute does not render the indecent solicitation of a child statute superfluous.

¶ 44 ### III. CONCLUSION

¶ 45 We hold that, under the plain language of section 11-25(a) of the Code, a defendant commits grooming when he seduces, solicits, entices, or lures a child to engage in sexual conduct with the defendant, including conduct that constitutes predatory criminal sexual assault. We reject defendant's interpretation that the statute requires not that the defendant would commit the offense but that the child would be enticed to commit the offense, because such a construction is inconsistent with the legislative intent and would lead to an absurd result. Accordingly, the judgment of the Stephenson County circuit court is affirmed. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2014); see also *People v. Nicholls*, 71 Ill. 2d 166, 178 (1978).

¶ 46 Affirmed.