2026 IL App (1st) 241495-U

No. 1-24-1495

First Division
June 22, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 09 CR 9349 |
| KEVIN WATSON, | ) ) | Honorable Ursula Walowski |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Presiding Justice Mitchell concurred in the judgment.

**ORDER**

¶ 1 *Held*: The trial court's decision to grant the State's petition for adult sentencing was not an abuse of discretion, and defendant's 25-year sentence is not excessive.

¶ 2 Following a jury trial, defendant-appellant was found guilty of first degree murder and personally discharging a firearm that caused death and sentenced to 60 years' imprisonment. Following multiple sentencing appeals, defendant's sentence was vacated and, relevant here, upon remand, the State filed a petition for adult sentencing under section 5-130(1)(c)(ii) of the Juvenile

Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/5-130(1)(c)(ii) (West 2020)). The trial court granted the petition and held a resentencing hearing, after which the court sentenced defendant to 25 years' imprisonment. Defendant appeals therefrom, arguing that (1) the trial court erred in granting the State's petition for adult sentencing and (2) defendant's 25-year sentence is excessive. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     We set forth only those facts necessary for disposition of this appeal. A complete recitation of the facts of this case, including a more detailed summary of the evidence presented at defendant's trial, can be found in this court's recent disposition in *People v. Watson*, 2026 IL App (1st) 231435-U (unpublished Rule 23 order).

¶ 5     On April 24, 2009, defendant, who was 15 years old at the time, was arrested and subsequently charged with, *inter alia*, multiple counts of first degree murder based on allegations that defendant was involved in the shooting death of 18-year-old Tommie Williams on April 2, 2009.

¶ 6     A jury trial was held in October 2011. At the trial, the State presented multiple eyewitnesses (Gerard Baker, Timothy Robinson, and William Jones), who each testified that they did not see who shot Williams; however, these eyewitnesses were confronted with their prior memorialized statements to law enforcement and assistant state's attorneys and their prior testimony before a grand jury, which conflicted with their testimony at trial.

¶ 7     In particular, Baker's written statement indicated that he, defendant, and a couple other friends were in his friend Davead McIntyre's bedroom playing video games when defendant received a phone call, walked to the window overlooking a nearby parking lot, and then exited the apartment. Shortly thereafter, Baker heard multiple gunshots and when he looked out the window,

he saw defendant running south, holding his arms close to his body. At trial, Baker testified that he did not remember defendant receiving a phone call and did not remember what he saw when he looked out the window after the shooting. He also testified that he knew defendant "hung around" with members of the Gangster Disciples gang, but he did not know if Williams was a member of the Black P-Stones gang.

¶ 8    Robinson's statement and grand jury testimony indicated that he was smoking outside of his apartment building when he observed Williams speaking with Jones, aka "Bud," near the parking lot. He saw defendant approach Williams from behind with his hand in his sweatshirt pocket, but he (Robinson) was facing away from Williams at the time the shots were fired. He also saw defendant running south after the shooting. At trial, Robinson claimed that he did not see anything and denied that he identified defendant as the person he saw approach Williams.

¶ 9    Finally, Jones's statement and grand jury testimony indicated that he was smoking with Williams near the parking lot when he observed defendant approach and fire a gun at Williams and then run south while clutching the gun to his body. At trial, Jones testified that he did not see anyone approach or point a gun at Williams.

¶ 10    Detectives also testified at trial that Robinson and Jones identified defendant as the shooter in physical lineups and photo arrays. Another witness, Eugene Ali, who did not see the shooting, testified that he observed defendant and another teenager running away after the shooting and talking excitedly. Ali also overheard one of the two teenagers state "what the hell did we do?", although he could not positively identify which one said this. The State additionally presented evidence that Williams had a five-pointed star tattoo on his arm, which is a signature tattoo for the Black P-Stones gang.

¶ 11    Defendant presented one witness, McIntyre, who contradicted the testimony of the State's eyewitnesses and stated that he never saw defendant on the day of the shooting. McIntyre testified that he saw the shooting from his bedroom window and the shooter was not defendant. The State presented rebuttal witnesses who impeached the testimony of McIntyre. Those witnesses testified that when McIntyre was interviewed he did not indicate that he had seen anything related to the shooting.

¶ 12    The jury found defendant guilty of first degree murder and personally discharging a firearm that proximately caused death. On May 30, 2012, defendant was sentenced to 60 years' imprisonment.

¶ 13    On direct appeal, this court affirmed defendant's conviction and sentence. *People v. Watson*, 2014 IL App (1st) 121741-U (unpublished Rule 23 order). On March 25, 2020, the supreme court denied defendant's petition for leave to appeal but entered a supervisory order directing this court to vacate its judgment and consider the effect of recent supreme court opinions on defendant's sentencing claims. *People v. Watson*, No. 118409 (March 25, 2020). On January 11, 2021, this court vacated defendant's sentence and remanded the case to the circuit court "for a new sentencing hearing in compliance with *People v. Buffer*, 2019 IL 122327, *People v. Holman*, 2017 IL 120655, and 730 ILCS 5/5-4.5-105." *People v. Watson*, No. 1-12-1741 (Jan. 11, 2021) (dispositional order).

¶ 14    On February 24, 2022, in compliance with this court's January 2021 order, a new sentencing hearing was held. Prior to the hearing, defendant filed a sentencing memorandum, alleging that because he was 15 years old at the time of the offense, the 2016 amendment to the Juvenile Court Act, which raised the automatic transfer age to 16 years old, applied to his case.

¶ 15    At the hearing, Michael Magana, deputy commander of intelligence for the Illinois Department of Corrections (IDOC), testified that a review of defendant's IDOC master file, which contained disciplinary records, showed that defendant received verbal reprimands and citations for yelling from his cell, possessing an unauthorized fan, assaulting staff, possessing a piece of metal in a mattress in his cell, and possessing four soda bottles with apples inside, the ingredients of which are used to make "hooch or alcohol intoxicants." On cross-examination, Magana testified that the first violation was in 2012 and the file did not show any disciplinary actions taken since 2016.

¶ 16    Defense counsel presented several witnesses in mitigation. Lisa Hearon, defendant's cousin, testified that defendant is a different person than he was before and he has dreams and goals that he would like to accomplish after his incarceration. She further testified that defendant had plenty of resources to help him acclimate back into society, including family members willing to help him, and she had been in contact with an organization that could provide him with housing upon release. Kristen McKee, another cousin of defendant's, also testified in support of defendant.

¶ 17    Wallace "Gator" Bradley, a self-employed political consultant and mentor, testified that he was a convicted felon who had been pardoned by the governor and he worked with incarcerated individuals like defendant. Bradley had been in contact with defendant for the past several months, and defendant shared with him that he had been transformed and rehabilitated during his incarceration. Bradley described defendant as "someone that's doing the time as opposed to letting the time do them." Finally, he testified that, when defendant is released, Bradley would aid and assist him in finding employment and connect him to his resource network.

¶ 18    In allocution, defendant testified that he would be satisfied with the trial court's decision no matter what it was, and he expressed appreciation for everyone who supported him during his

incarceration. He further testified that he is "ready to be a part of society" and is "committed to using [his] experiences while incarcerated as a tool to create change and effect strategies to eliminate gun violence ***[.]"

¶ 19    The trial court declined to sentence defendant as a juvenile but imposed a lesser sentence of 25 years. In doing so, the court acknowledged defendant's efforts to change his life and found his rehabilitation to be a significant factor in mitigation. Because of that mitigation, the court declined to impose the 25-year firearm enhancement. However, the court also determined that it could not give defendant the minimum sentence because of the seriousness of the offense and defendant's juvenile history. Thus, the court found 25 years to be an appropriate sentence.

¶ 20    On March 21, 2022, defendant filed a motion to reconsider the sentence, which the court denied on March 28, 2022.

¶ 21    Defendant appealed contending that his sentence should be vacated and the cause remanded for resentencing because the court failed to apply the 2016 amendment to the automatic transfer provision of the Juvenile Court Act. The State agreed that defendant's sentence should be vacated, and the case was remanded to give the State an opportunity to file a motion to transfer the proceedings to adult court. Accordingly, we vacated defendant's sentence and once again remanded the case to the circuit court where the State would have the opportunity to file a petition for adult sentencing under section 5-130(1)(c)(ii) of the Juvenile Court Act (705 ILCS 405/5-130(1)(c)(ii) (West 2020)). *People v. Watson*, No. 1-22-0741 (Dec. 19, 2023) (summary order).

¶ 22    Upon remand, on December 21, 2023, the State filed a petition in which it sought to have defendant sentenced as an adult. On February 5, 2024, defendant filed a response, arguing that he should be sentenced as a juvenile.

¶ 23    On May 30, 2024, a hearing was held on the State's petition. The defense called Chicago police officer Brian Ebinger and Major Kalin Bridges, for the purpose of demonstrating rehabilitation. Officer Ebinger testified that he was currently working in the Restrictive Housing Unit at Menard Correctional Center and for the prior year and a half, he had observed defendant as a worker in that unit. He testified that defendant was "hardworking" and there were never any issues with him. Major Bridges testified that he had worked at Menard for ten years. He knew defendant had some behavior issues when he first arrived at Menard, but eventually he trusted defendant to "do a good job" as a worker and defendant was praised on his job performance by his supervisors. Finally, Major Bridges testified that he believed defendant had actually changed "for the better."

¶ 24    The court acknowledged the documents submitted by defendant that included certificates of completion for courses in food handling safety, business strategy, meditation, forklift safety, motivational interviewing, wellness recovery, basic custodial techniques, and other self-help courses. Also included were nine positive inmate-employee evaluations, a donation confirmation letter from St. Jude's Children's Research Hospital, documentation of defendant's application for student aid, defendant's resume, and IDOC memos showing defendant had earned 78 days of program sentence credit but was ineligible because his sentence was imposed at 100% time served. Finally, a letter from a Menard Correctional Center educator stated that defendant was in the advanced adult basic education to acquire his GED and demonstrated positive behavior and a desire to learn in the class.

¶ 25    The court granted the State's petition. In doing so, the court stated that the offense itself was the "strongest factor" where "defendant at 15 years and two months had a weapon that he discharged with others and killed somebody." As to security of the public, the court stated that it

agreed with the State that the factor weighed in favor of adult sentencing based, again, on the nature of the offense. The court then noted that the "juvenile facilities" factor was difficult to decide but concluded that "yes, juvenile court back then would've had facilities for the defendant," which "would exist in most cases." Nonetheless, the court found that the other factors weighed "overwhelmingly" in favor of adult sentencing.

¶ 26    The parties agreed to adopt all evidence and arguments presented at the previous resentencing hearing held on February 24, 2022, as well as all evidence presented for the hearing on the State's petition. Defendant asked for a sentence of 20 years based on the additional rehabilitation he demonstrated since the 2022 resentencing hearing. Defendant spoke in allocution, stating that he was satisfied with the court's disposition and he would continue to "try to better" himself and encourage others around him to do the same regardless of the court's decision. The State argued that he should be resentenced to 25 years.

¶ 27    The court noted that defendant "continued to do well" and his rehabilitation "did play a large part" in the 2022 resentencing. The court also considered the seriousness of the offense and the fact that defendant already had a juvenile history at age 15. The court concluded that it did not find that anything presented in mitigation was persuasive enough to lower the sentence from 25 years. Thus, the court again sentenced defendant to 25 years' imprisonment. On June 13, 2024, defendant filed a motion to reconsider his sentence. On July 10, 2024, the court denied defendant's motion to reconsider. Defendant timely filed a notice of appeal.

¶ 28    Before proceeding with our analysis of defendant's claims in this present appeal, we note as a part of the procedural history of this case that, in postconviction proceedings commencing in 2016, defendant also pursued a claim of actual innocence. On June 12, 2023, the trial court denied

that petition following an evidentiary hearing. On March 31, 2026, this court affirmed. *People v. Watson*, 2026 IL App (1st) 231435-U.

¶ 29                                    II. ANALYSIS

¶ 30    In this appeal, defendant argues that (1) the trial court erred in granting the State's petition for adult sentencing and (2) defendant's 25-year sentence is excessive.

¶ 31    Preliminarily, we address defendant's assertion contained in his argument for each issue on appeal that the trial court should have considered the newly discovered evidence presented at the third-stage postconviction hearing. As noted above, on March 31, 2026, we disposed of defendant's appeal related to that postconviction proceeding, concluding that the trial court correctly denied defendant relief on his postconviction petition alleging actual innocence. See *People v. Watson*, 2026 IL App (1st) 231435-U (unpublished Rule 23 order). Thus, we do not consider defendant's assertions as related to his postconviction petition.

¶ 32                          A. Petition for Adult Sentencing

¶ 33    Defendant first argues that the trial court erred in granting the State's petition for adult sentencing. He specifically contends that the statutory factors set forth in the Juvenile Court Act weighed against sentencing him as an adult and the trial court misunderstood the applicable law by indicating that discharge was not an option.

¶ 34    Section 5-130 of the Juvenile Court Act, also known as the "automatic transfer" statute, serves as an exception to the juvenile court's exclusive jurisdiction over minors charged with a criminal offense. *People v. Fort*, 2017 IL 117966, ¶ 23. In 2016, the statute was amended to raise the predicate age for automatic transfer from age 15 to 16. 705 ILCS 405/5-130(1)(a) (West 2016). Here, defendant was 15 years old at the time of the offense. Because his case was pending in the circuit court for resentencing in 2021, amended section 5-130 was applicable to defendant's case.

See *People v. Watson*, No. 1-22-0741 (Dec. 19, 2023) (summary order); see also *People v. Clark*, 2020 IL App (1st) 182533, ¶ 70 (finding the 2016 amendment applied where the defendant had been found guilty, but not sentenced, and the proceedings were "ongoing" at the time of the amendment). More specifically, pursuant to section 5-130(c)(ii), defendant was subject to juvenile sentencing unless the State requested a hearing that he instead be sentenced as an adult under Chapter V of the Unified Code of Corrections. 705 ILCS 405/5-130(c)(ii) (West 2022). Upon remand from this court, and consistent with section 5-130(c)(ii) of the Act, the State properly filed a petition for adult sentencing.

¶ 35    The statute then requires that "the court shall conduct a hearing to determine if the *minor"* should be subject to adult sentencing, and in making that determination, the court must consider "among other matters":

> "(a) whether there is evidence that the offense was committed in an aggressive or premeditated manner; (b) the age of the *minor*; (c) the previous history of the *minor*; (d) whether there are facilities particularly available to the Juvenile Court or the Department of Juvenile Justice for the treatment and rehabilitation of the *minor*; (e) whether the security of the public requires sentencing under Chapter V of the Unified Code of Corrections; and (f) whether the *minor* possessed a deadly weapon when committing the offense." (Emphasis added.) *Id.*

No single factor is necessarily determinative, and each factor need not be given equal weight. *People v. Martin*, 285 Ill. App. 3d 623, 631 (1996). Further, "[n]ot all of the statutory criteria must be resolved against the minor to justify treating him as an adult." *People v. Vasquez*, 327 Ill. App. 3d 580, 586 (2001). Finally, the legislature's inclusion of the phrase "among other matters"

indicates that the trial court's inquiry is not solely limited to the enumerated factors. *People v. Stephens*, 323 Ill. App. 3d 345, 351 (2001).

¶ 36    If the court finds that the defendant should not be subject to adult sentencing, then " 'the proper remedy is to discharge the proceedings against defendant since he is now over 21 years of age and is no longer eligible to be committed as a juvenile under the Act.' " *Clark*, 2020 IL App (1st) 182533, ¶ 84 (quoting *Fort*, 2017 IL 118966, ¶ 41). Otherwise, the court should sentence defendant as an adult in accordance with section 5-4.5-105 of the Unified Code of Corrections. 705 ILCS 405/5-130(c)(ii).

¶ 37    A trial court's decision to sentence a juvenile as an adult is reviewed for abuse of discretion. *Vasquez*, 327 Ill. App. 3d at 587. "An abuse of discretion occurs when the trial court's decision is arbitrary, fanciful, or unreasonable or when no reasonable person would agree with the trial court's position." *People v. Brand*, 2021 IL 125945, ¶ 36.

¶ 38    Before proceeding with our analysis, we note the atypical procedural posture within which the trial court was required to consider these factors. The record reflects that defendant was born on January 23, 1994. He was 15 years old when he committed the offense and 18 years old at the time of his initial sentencing hearing, which occurred prior to the 2016 amendment. Defendant's resentencing pursuant to *Buffer* occurred in 2022, at which time he was 28 years old. That is the first opportunity the State would have had to petition for adult sentencing. However, even at that juncture, defendant was no longer a juvenile and had the trial court determined that he should be sentenced as a juvenile, he would have been discharged because he had surpassed the age of majority. Consequently, conducting an adult sentencing hearing to determine whether defendant should be sentenced as a juvenile or an adult is "not impracticable." *People v. Luna*, 2025 IL App (2d) 240382, ¶ 39.

¶ 39    At first blush, it would seem that, at least temporally, some of the statutory factors are inapplicable in this case. Defendant, who was a 15-year old minor when incarcerated, is now a 32-year-old adult, who has been incarcerated for more than a decade, facts that were not lost on the trial court in reviewing the State's petition and defendant's response. However, whether the trial court should consider defendant's conduct and circumstances (1) at the time of the first sentencing in 2012, when he was approximately age 18, (2) at the time of the 2022 resentencing pursuant to *Buffer*, when he was approximately age 28, or (3) at the time of the adult sentencing hearing in 2024, when he was approximately age 30, we believe is resolved by a plain reading of the statute. *People v. Glisson*, 202 Ill. 2d 499, 504 (2002) (in construing a statute, "the court applies the plain and ordinary meaning of the statutory language").

¶ 40    "The most reliable indicator of legislative intent is the language of the statute itself[.]" *People v. Vara*, 2016 IL App (2d) 140849, ¶ 34. "Courts review the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation." *Id.* Additionally, courts may consider the legislature's core purpose in enacting the statute, including the evils sought to be remedied, as well as the consequences of construing the statute in one manner over another. *Id.* Finally, in enacting legislation, "we presume that the legislature did not intend to create absurd, inconvenient, or unjust results." *Id.*

¶ 41    Notably, the plain language of the statute supports the conclusion that the legislature intended application of the statutory factors during the offender's age of minority. Each of the factors references, not "the defendant," but instead, "the minor." Additionally, to apply the factors at a time beyond the age of minority would automatically render, at least one of the factors, the availability of juvenile facilities, superfluous. See *People v. Farris*, 2024 IL App (5th) 240745, ¶ 43 (a "fundamental principle of statutory construction is that words and phrases should be

interpreted so that no terms are rendered superfluous"). Further, where the court determines that a defendant, who has reached the age of majority, should have been sentenced as a minor, the court's only recourse is to discharge the defendant. *Fort,* 2017 IL 118966, ¶ 41. Based on our review of the statute, we believe that the factors to be applied require that the court, in this case, take a backward look at defendant's conduct during the time when he was yet a minor.

¶ 42     That said, we turn to consider each factor as relative to the trial court's ultimate sentencing determination. The first, third, and final factors, *i.e.*, offense committed in an aggressive or premeditated manner, previous criminal history, and possession of a deadly weapon when committing the offense, all clearly weigh in favor of adult sentencing in this case. The evidence presented in this case clearly shows that defendant discharged a deadly weapon in commission of the murder of Williams, and there is no dispute that he had a juvenile history prior to the commission of this offense.

¶ 43     Defendant asserts that the evidence does not support a finding that the murder was either premeditated or aggressive. We disagree. The evidence adduced at trial showed that defendant approached Williams from behind and fired multiple shots at his back. We are hard-pressed to characterize these actions as anything other than aggressive. Moreover, the definition of "premeditated" is "characterized by fully conscious willful intent and a measure of forethought and planning[.]" Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/premeditated (last visited April 1, 2026). There was evidence presented at trial that defendant saw Williams from a window in a nearby apartment complex shortly before the shooting, thus demonstrating fully conscious willful intent and a measure of forethought. This was not only a senseless act of violence, but based on our review of the evidence, it was also a deliberate one.

¶ 44    The second factor is defendant's age at the time of the offense, which was 15 years old. Defendant was just ten months shy of being subject to automatic transfer for adult sentencing under the amended statute. He contends that his age should weigh against adult sentencing because teenagers "have diminished culpability and greater prospects for reform than adults."

¶ 45    Although defendant's argument comports, somewhat, with the purpose and intent of the Juvenile Court Act, it nonetheless fails. The Juvenile Court Act, which first took effect in 1899, "focused on rehabilitation and differed from criminal courts by treating the child as a person in need of assistance rather than punitive justice for the crime." Illinois Supreme Court History: Juvenile Court, June 23, 2020, https://www.illinoiscourts.gov/News/388/Illinois-Supreme-Court-History-Juvenile-Courts/news-detail/ (last visited June 4, 2026). Under the Juvenile Court Act, juvenile courts have exclusive jurisdiction over minors under the age of 18. 705 ILCS 405/5-120 (West 2016). Except in certain circumstances, the Juvenile Court Act precludes prosecution of such minors under Illinois's criminal laws. *Id.* Thus, although a minor defendant's age could conceivably weigh against adult sentencing, the statutory factors, when applied for their intended purpose, may dictate otherwise.

¶ 46    Implicit in defendant's argument is that any age below 16 years old should weigh against adult sentencing, which would defeat the purpose of age being a statutory factor at all. Contrary to defendant's position, our courts have found that the defendant's age being close to the age limit for juvenile sentencing weighs in favor of adult sentencing. See *In the Interest of D.T.*, 141 Ill. App. 3d 1036, 1043 (1986) (that the defendant was "1 1/2 years short of the upper age limit for juvenile jurisdiction" weighed in favor of adult sentencing); see *People v. Williamson*, 131 Ill. App. 3d 321, 325 (1985) (noting that the defendant was "a scant six months from the upper age

limit of juvenile court jurisdiction" in affirming the trial court's decision in favor of adult sentencing). Thus, we find defendant's argument to be without merit.

¶ 47    We next consider the factor of "whether there are facilities particularly available to the Juvenile Court or the Department of Juvenile Justice for the treatment and rehabilitation of the minor[.]" 705 ILCS 405/5-130(c)(ii). Defendant argues that the trial court "showed no consideration of [defendant's] likelihood of success in an available juvenile facility" in light of his "personal and social history" and that the trial court's remarks showed that the court did not believe this factor was applicable. Defendant contends that the evidence of his rehabilitation showed that he would have been able to rehabilitate in a juvenile facility and, if that evidence had been considered, this factor would have weighed heavily against adult sentencing.

¶ 48    Here, the trial court initially stated that this factor did not apply; however, in issuing its ruling, the court stated that "the juvenile court back then would've had facilities" for defendant's rehabilitation and those facilities "would exist in most cases." Thus, the court ultimately agreed with defendant that this factor weighed in favor of juvenile sentencing because there were facilities available for his rehabilitation. As such, defendant's argument finds no basis in the record. Even so, the court's finding on that factor did not alter the court's ultimate determination.

¶ 49    Lastly, we turn to the factor of whether the security of the public requires adult sentencing. Defendant contends that there was no evidence he had threatened any member of the public prior to, during, or subsequent to his trial, no evidence of an ongoing dispute with any member of the public, no evidence that he had a motive to commit an offense against the public or any person, and no evidence of bad behavior during incarceration. We disagree. The commission of this offense, in itself, is sufficient to show that defendant was a threat to the public. Additionally, there

was evidence presented at trial that the offense was potentially gang-related, suggesting that there may have been an ongoing dispute, contrary to defendant's assertion here.

¶ 50    Defendant also argues that the trial court should have considered his extensive rehabilitation efforts in weighing this factor. Again, we disagree. As we have previously noted, the statute applies to the time period when defendant was a minor. Much, if not all of the evidence of his rehabilitative potential was evidenced after he reached the age of majority, a factor not expressly included among those to be considered in the context of these particular proceedings. Further, had these proceedings occurred before defendant reached the age of majority, the particulars of defendant's rehabilitation would not have at that time occurred for the court's consideration. Again, on these facts, the statute requires that the court take a backward look at the minor's conduct as opposed to his conduct as an adult.

¶ 51    Although the statute also provides that the court may consider "other matters," there is nothing in the plain language of the statute that expressly states that the court must consider any rehabilitation efforts already made at the time of sentencing. The factor at issue here specifies only that the court must consider the security of the public. The trial court, in its discretion, did not consider defendant's rehabilitation efforts and focused instead on defendant's circumstances at the time of the offense. We agree with the trial court's application of the statutory factors and find that its reasoning does not run afoul of the plain language of the statute.

¶ 52    Moreover, these same factors can be found elsewhere in the Juvenile Court Act, specifically in section 5-810 (705 ILCS 405/5-810 (West 2024)). However, that section provides for "extended jurisdiction juvenile prosecutions" unless the trial court "makes a finding based on clear and convincing evidence" that adult sentencing would not be appropriate for the minor "based on an evaluation" of six statutory factors. *Id.* Those statutory factors are the same as those listed

in section 5-130(c)(ii), but three of those factors (history of the minor, circumstances of the offense, and security of the public) also set forth subfactors that give greater insight into how those factors should be considered. *Id.* Finally, section 5-810 specifically states that "the court shall give greater weight to the seriousness of the alleged offense, and the minor's prior record of delinquency than to other factors[.]" *Id.*

¶ 53   Significantly, " 'where the legislature includes particular language in one section of a statute but omits it in another section of the same statute, courts will presume that the legislature acted intentionally in the exclusion or inclusion' (*People v. Smith*, 2016 IL 119659, ¶ 30) 'and that the legislature intended different results.' (*People v. Hunter*, 2017 IL 121306, ¶ 48)." *People v. Reed*, 2025 IL 130595, ¶ 101. Here, the legislature intentionally did not provide those specific directives for the trial court in considering the factors in section 5-130(c)(ii), suggesting that the legislature intended to grant the court more discretion in its decision as to whether the defendant should be subject to adult or juvenile sentencing. See *People v. Scott*, 2016 IL App (1st) 141456, ¶ 58 (noting that section 5-810 contains "more detailed and extensive" statutory factors than those in section 5-130(c)(ii) and therefore hearings under these sections may result in a different outcomes). For these reasons, we conclude that the trial court did not abuse its discretion in not considering defendant's rehabilitation efforts where it was not required to do so under the statute.

¶ 54   As a final note, we disagree with defendant's assertion that the trial court failed to consider the possibility of discharge. When defense counsel was addressing the juvenile facilities factor, the court interjected: "But I can't send a 30 year old to the Juvenile Justice [Center], right? So that's kind of not an option for me to consider." The court clearly understood that, even were it to determine defendant should be sentenced as a juvenile, he nonetheless could not be sent to a juvenile facility due to his age. The fact that the court did not explicitly state that discharge was an

option is not significant, as courts are presumed to know and follow the law, and there is nothing in the record to affirmatively show that the trial court misunderstood the law. See *In re Jonathan C.B.*, 2011 IL 107750, ¶ 72 (trial courts are presumed to know and apply the law unless the record affirmatively demonstrates otherwise). Thus, this argument is also rejected.

¶ 55    In conclusion, the trial court's decision to grant the State's petition was not an abuse of discretion where the applicable factors weighed in favor of adult sentencing, and the record supported such findings.

¶ 56                                    B. Excessive Sentence

¶ 57    Defendant also argues that his 25-year sentence, which is five years above the statutory minimum, is excessive, particularly where significant evidence of his rehabilitation was presented to the trial court. Defendant, therefore, requests that this court reduce his sentence to the statutory minimum of 20 years.

¶ 58    The Illinois Constitution requires that a sentence achieve a balance between the seriousness of the offense and the defendant's rehabilitative potential. *People v. Lee*, 379 Ill. App. 3d 533, 539 (2008) (citing Ill. Const. 1970, art. 1, § 11). When a sentence falls within statutory guidelines, it is presumed proper. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. It will only be considered excessive if it varies greatly with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *People v. Stacey*, 193 Ill. 2d 203, 210 (2000).

¶ 59    A trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference on review. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). Deference is owed because the trial court is in a superior position to fashion an appropriate sentence based on firsthand consideration of the relevant sentencing factors, including the defendant's credibility, demeanor, moral character, mentality, social environment, habits, and age.

*People v. Snyder*, 2011 IL 111382, ¶ 36. It is the trial court's role "to balance relevant factors and make a reasoned decision as to the appropriate punishment in each case." *People v. Latona*, 184 Ill. 2d 260, 272 (1998). Thus, whether the sentence imposed by the trial court is excessive is reviewed for abuse of discretion. *People v. McKinley*, 2020 IL App (1st) 191907, ¶ 70.

¶ 60    In the instant case, the trial court resentenced defendant to 25 years, as it also did at the 2022 sentencing hearing. That sentence is within the statutory sentencing range, close to the minimum in fact, and is therefore presumed proper.

¶ 61    Nonetheless, defendant contends that the new mitigating evidence presented at the hearing justified a sentence of 20 years, the statutory minimum. In particular, he points to: the new employee evaluations submitted to the court; Major Bridges' and Officer Ebinger's testimony that defendant was a good worker; defendant's relatives' testimony of their support for him; additional character letters acknowledging defendant's positive efforts; defendant's completion of a number of courses, despite knowing he was ineligible for sentencing credit; his monetary donation to St. Jude's Children's Research Hospital; and evidence that he had employment and housing options upon release. Defendant maintains that, in light of his "demonstrated commitment to rehabilitation[,]" the court should not have given greater weight to the seriousness of the offense and defendant's juvenile history.

¶ 62    However, we may not overturn a sentence merely because the relevant factors could have been weighed differently (*People v. McGowan*, 2013 IL App (2d) 111083, ¶ 10), and we must presume the trial court considered all of the relevant mitigating evidence presented (*People v. Gordon*, 2016 IL App (1st) 134004, ¶ 51). Here, the trial court acknowledged all of the documents submitted for resentencing and expressly recognized defendant's tremendous rehabilitation efforts, noting that defendant "continued to do well" and his rehabilitation "did play a large part" in the

2022 resentencing. Nonetheless, the court determined that those efforts did not negate the seriousness of the offense and the fact that defendant had a criminal history at the time of the offense. See *People v. Jones*, 2019 IL App (1st) 170478, ¶ 55 (the presence of mitigating factors does not mandate a minimum term); *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 123 (same). It is clear from the record that the trial court appropriately considered all relevant factors in both mitigation and aggravation in imposing the 25-year sentence.

¶ 63    Regardless, "it is not our duty to reweigh the factors" involved in the sentencing court's decision, and thus, we will not question the court's judgment as to this factor of rehabilitation where it appropriately considered the mitigating evidence. *Alexander*, 239 Ill. 2d at 214 (criticizing the appellate court for substituting its own judgment for that of the trial court, which is "an improper exercise of the powers of a reviewing court"). Nothing in the record suggests to us that the court's decision was "arbitrary, fanciful, or unreasonable[.]" See *Brand*, 2021 IL 125945, ¶ 36. Therefore, defendant's 25-year sentence was not excessive, and the trial court did not abuse its discretion.

¶ 64                                    III. CONCLUSION

¶ 65    For the reasons stated, we affirm the judgment of the circuit court.

¶ 66    Affirmed.